**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 22 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GREEN COUNTRY FOOD MARKET,
INC., d/b/a Collinsville IGA; GREEN
COUNTRY FOOD MARKET NO. 3,
INC., d/b/a Harvest Fine Foods No. 3;
GREEN COUNTRY FOOD MARKET
NO. 4, INC., d/b/a Harvest Find Foods
No. 4; GREEN COUNTRY FOOD
MARKET NO. 5, INC., d/b/a Harvest
Fine Foods No. 5; GREEN COUNTRY
FOOD MARKET NO. 6, INC., d/b/a
Cushing IGA; BRISSA, INC., d/b/a
Foodworld IGA; PLAZA REDBUD
INC., d/b/a Plaza Redbud
Supermarket; and NET-MOR FOOD
OUTLET, INC., d/b/a Net-mor Food
Outlet,

     Plaintiffs - Appellants,
v.

BOTTLING GROUP, LLC and
BOTTLING GROUP HOLDINGS,
INC.,

     Defendants - Appellees.

No. 02-5076

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 01-CV-0411-E)**

---

Keith A. Ward, (Nancy C. Curtis with him on the briefs) Richardson, Stoops,
Richardson & Ward, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Jon E. Brightmire, (James P. McCann and R. Charles Wilkin III, with him on the brief) Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiffs, retail grocery stores operating in the Tulsa, Oklahoma area, brought this diversity action under the Oklahoma Antitrust Reform Act against their local distributor of Pepsi and affiliated beverage products and its holding company ("Bottling Group" and "Holdings"). Plaintiffs alleged that Bottling Group unlawfully discontinued sales to Plaintiffs in response to a price discrimination lawsuit Plaintiffs had previously brought against Bottling Group's predecessor-in-interest. The district court granted summary judgment in favor of Bottling Group and Holdings. On appeal, Plaintiffs primarily challenge the district court's definition of the relevant product market. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## BACKGROUND

Plaintiffs are corporations that operate grocery stores, each owned in whole or in part by either Steven Davis or Brian Honel. Plaintiff Brissa, Inc. (operated by Mr. Honel) and Plaintiff Plaza Redbud Inc. (operated by Mr. Davis) had

purchased Pepsi and affiliated beverage products from Beverage Products Corporation ("BPC"), the exclusive distributor of these products in the Tulsa area. By 1997, Mr. Honel and Mr. Davis had recognized that they were often unable to sell their Pepsi products at prices competitive with other area grocery stores. Mr. Honel and Mr. Davis compared their invoices from BPC and discovered that BPC had been charging them different wholesale prices for the beverage products it distributed. On January 5, 1999, Plaintiffs Brissa and Plaza Redbud sued BPC for price discrimination under Oklahoma antitrust laws.

On February 8, BPC transferred all assets, liabilities, and stock to Bottling Group Holdings, Inc. ("Holdings"), which the same day transferred the same assets, liabilities, and stock to Bottling Group, LLC ("Bottling Group"). Bottling Group is majority owned by Holdings, and Holdings is indirectly wholly owned by The Pepsi Bottling Group, Inc.

On February 11, Bottling Group discontinued sales to Plaintiffs Brissa and Plaza Redbud because of a "distinct decrease in the level of trust" between Bottling Group and each grocery store stemming from the pending price discrimination lawsuit. Bottling Group has also refused to distribute its products to other Plaintiff grocery stores that Mr. Honel and Mr. Davis have acquired. Plaintiffs therefore have no access, other than retail purchase, to the 155 Pepsi and affiliated beverage products distributed by Bottling Group.

Plaintiffs filed this lawsuit against both Bottling Group and Holdings under §§ 203 and 205 of the Oklahoma Antitrust Reform Act, Okla. Stat. tit. 79, § 201 *et seq.* The complaint alleged monopolization, attempt to monopolize, and conspiracy to monopolize under § 203(B) and denial of access to an essential facility under § 203(C), and requested injunctive relief and monetary damages under § 205. All allegations were predicated on Bottling Group's refusal to deal with Plaintiffs following Plaintiffs' initiation of the price discrimination lawsuit against BPC.

The district court denied Plaintiffs' request for a preliminary injunction and granted summary judgment in favor of Bottling Group and Holdings. The district court held that Plaintiffs had not pled a claim under § 203(A) of the Oklahoma Antitrust Reform Act, which prohibits unilateral acts in restraint of trade, and that their claims under §§ 203(B) and 203(C) of the Act failed because Plaintiffs had not proven that the beverage products distributed by Bottling Group comprised a relevant product market.

Plaintiffs timely filed this appeal. Plaintiffs argue that the complaint stated a claim under § 203(A) and, in the alternative, that the complaint should have been treated by the district court as constructively amended, under Federal Rule of Civil Procedure 15(b), to include a § 203(A) claim. Plaintiffs also argue that the district court erred in requiring Plaintiffs to offer proof of a relevant product

market and, in the alternative, in rejecting Plaintiffs' narrow definition of the relevant product market.

## DISCUSSION

We review a grant of summary judgment *de novo,* applying the same standard used by the district court.  State of Utah v. Babbitt, 53 F.3d 1145, 1148 (10th Cir. 1995).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c). We construe the facts and inferences therefrom in the light most favorable to the non-moving party.  Babbitt, 53 F.3d at 1148.[1]

---

[1]Summary judgment in antitrust cases should be used sparingly because motive and intent play leading roles in the analysis.  Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 882 (10th Cir. 1997); Dreiling v. Peugeot Motors of Am., Inc., 850 F.2d 1373, 1379 (10th Cir. 1988).  However, the usual rules governing summary judgment still apply in antitrust cases.  Sports Racing, 131 F.3d at 882.

## A. Whether Plaintiffs Properly Pled a § 203(A) Claim

### 1. The complaint

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

A plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense. Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). The liberalized pleading rules, however, do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case. Id. at 1091. This practice, if tolerated, "would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." Id. (affirming district court's determination precluding plaintiff from litigating new legal theory raised for first time in response to defendant's motion for summary judgment).

In Dunn v. Ewell (In re Santa Fe Downs), the complaint cited one section of the Bankruptcy Act but the plaintiffs attempted to introduce evidence pertaining to a second section. 611 F.2d 815, 816 (10th Cir. 1980). We held that the plaintiffs had not properly stated a claim under that second section. See id. We noted that "[w]e cannot say that the incorrect statutory citation was an unimportant detail implicitly corrected by the facts alleged in the complaint." Id. "[A] fundamental statutory citation is not a mere fact and, if incorrect, may topple the structure of the complaint, particularly where the citation appears to represent the legal theory upon which the plaintiff relies." Id.

In this case, Plaintiffs did not mention § 203(A) in their complaint but referred only to §§ 203(B), 203(C), and 205.[2] Plaintiffs' allegations focused

---

[2]Section 203 of the Oklahoma Antitrust Reform Act provides in relevant part:

A. Every act, agreement, contract, or combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal.

B. It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce in a relevant market within this state.

C. Without limiting any other section of Title 79 of the Oklahoma Statutes or applicable sections of Title 17 of the Oklahoma Statutes, it is unlawful for any person in control of an essential facility to unreasonably refuse to give a competitor or customer of an entity

(continued...)

exclusively on alleged monopolization under § 203(B) and denial of access to an

essential facility under § 203(C). Plaintiffs failed to mention § 203(A), which

prohibits unilateral acts in restraint of trade, either in form or in substance.

As in Dunn, we cannot say that this omission was "an unimportant detail."

See 611 F.2d at 816. The complaint did not place Defendants Bottling Group and

Holdings on notice of the need to defend against a § 203(A) claim, as was

demonstrated by Defendants' failure to offer any defense to a § 203(A) claim in

their initial motion for summary judgment. Plaintiffs' citation to § 203(A) in

their response to Defendants' motion did not cure that error. See Evans, 936 F.2d

at 1091. A claim for unilateral acts in restraint of trade is sufficiently

distinguishable from either a monopolization or an essential facilities claim that

Plaintiffs should have mentioned the claim in the complaint. Accordingly, the

district court did not err in holding that Plaintiffs had not pled a § 203(A) claim

in their complaint.

---

[2](...continued)
controlling an essential facility access to it upon reasonable terms if
the effect of such denial is to injure competition. An injured
competitor or customer may bring an action under Section 5 of this
act to enforce the provisions of this section only when such injured
competitor or customer does not have a remedy before the
Corporation Commission.

Okla. Stat. tit. 79, § 203(A)-(C). Section 205 provides for injunctive relief and
monetary damages to any person injured by a violation of the Act. Id. § 205(A).

## 2. Rule 15(b)

We review a district court's denial of a motion to treat the complaint as amended for abuse of discretion. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1216 (10th Cir. 2000). Federal Rule of Civil Procedure 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Fed. R. Civ. P. 15(b). Rule 15(b) is "intended to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel[.]" Wright et al., Federal Practice and Procedure, § 1491, at 5 (2d ed. 1990) (quoted with approval in Brandon v. Holt, 469 U.S. 464, 471 n.19 (1985)).

Rule 15(b) contains two mechanisms for amending the complaint to conform to the evidence. First, a complaint may be impliedly amended under Rule 15(b) "if an issue has been tried with the express or implied consent of the parties and not over objection." Hardin v. Manitowoc-Forsythe Corp., 691 F.2d

- 9 -

449, 456 (10th Cir. 1982). A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence. Koch, 203 F.3d at 1217. However, implied consent cannot be based on the introduction of evidence that is relevant to an issue already in the case when there is no indication that the party presenting the evidence intended to raise a new issue. Moncrief v. Williston Basin Interstate Pipeline Co., 174 F.3d 1150, 1162 (10th Cir. 1999).

This mechanism for implying an amendment is not available if the opposing party objects to evidence pertaining to a new claim. Dunn, 611 F.2d at 817. Instead, upon objection by the opposing party, the party wishing to amend the pleadings must employ the second mechanism of Rule 15(b). Pursuant to that mechanism, the pleadings may be amended if the party files a motion to amend the complaint and the objecting party fails to satisfy the court that it will be prejudiced by the amendment. Fed. R. Civ. P. 15(b). The party must expressly move under Rule 15(b) for such an amendment. Moncrief, 174 F.3d at 1163 n.7 ("A court may not sua sponte invoke the second portion of Rule 15(b)."). Accordingly, when proper objections have been made but no Rule 15(b) motion has been filed, the lack of prejudice to a party does not provide a basis for an amendment. Dunn, 611 F.2d at 817.

In the instant case, Plaintiffs referenced § 203(A) only three times in their motions below or in response to Bottling Group and Holdings' motion for summary judgment. Each reference involved a mere citation to or quotation of § 203(A) and was unaccompanied by any evidence that differed from the evidence offered in support of their §§ 203(B) and 203(C) claims. Significantly, Bottling Group and Holdings objected to Plaintiffs' attempt to raise a § 203(A) claim on the ground that the claim was not pled in the complaint. In light of this objection, the first mechanism of Rule 15(b) is inapplicable. See Dunn, 611 F.2d at 817. Because a court can invoke the second mechanism of Rule 15(b) only in response to a Rule 15(b) motion and because Plaintiffs filed no such motion, the second mechanism of Rule 15(b) is likewise inapplicable. See Moncrief, 174 F.3d at 1163 n.7.

Accordingly, the district court did not abuse its discretion in refusing to treat Plaintiffs' complaint as amended under Rule 15(b) to include a § 203(A) claim.

## B. The Relevant Product Market

The Oklahoma Antitrust Reform Act is construed in accordance with federal antitrust law. Okla. Stat. tit. 79, § 212; see also Teleco, Inc. v. Ford Indus., Inc., 587 P.2d 1360, 1362 (Okla. 1978). Sections 203(B) and 203(C) of

the Oklahoma Antitrust Reform Act both require that the plaintiff prove a relevant market.

Under § 203(B), "[i]t is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce in a relevant market within this state." Okla. Stat. tit. 79, § 203(B). Accordingly, to establish liability under § 203(B), a plaintiff must first define the relevant market. Id. § 203(D)(1)(a); see also Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177 (1965) ("Without a definition of that market there is no way to measure [a defendant's] ability to lessen or destroy competition."); Smalley & Co. v. Emerson & Cuming, Inc., 13 F.3d 366, 368 (10th Cir. 1993) (to establish § 2 Sherman Act violation for monopolization or attempted monopolization, plaintiff must define relevant market).

Under § 203(C), "it is unlawful for any person in control of an essential facility to unreasonably refuse to give a competitor or customer of an entity controlling an essential facility access to it upon reasonable terms if the effect of such denial is to injure competition." Okla. Stat. tit. 79, § 203(C). Pursuant to the statute, an "essential facility" is a facility which, inter alia, "is controlled by an entity that possesses monopoly power." Id. § 203(D)(3)(a). "Monopoly power" is "the power to control market prices or exclude competition." Id. § (D)(2); see also United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377,

391 (1956). To prove monopoly power, the plaintiff must first define the relevant market. See Walker Process Equip., 382 U.S. at 177.

Accordingly, both § 203(B) and § 203(C) require proof of a relevant market. The relevant market inquiry has two components: geographic market and product market. Telecor Communications, Inc. v. Southwestern Bell Tel. Co., 305 F.3d 1124, 1130 (10th Cir. 2002). Only the latter is an issue in this appeal.

The Supreme Court articulated the standard for defining the relevant product market in United States v. E.I. du Pont de Nemours & Co., 351 U.S. at 404. A relevant product market consists of "products that have reasonable interchangeability for the purposes for which they are produced – price, use and qualities considered." Id.; Teleco, 587 P.2d at 1364. The interchangeability of products is measured by, and is substantially synonymous with, cross-elasticity. Telecor, 305 F.3d at 1131. A market is "cross-elastic" if rising prices for one product causes consumers to switch to the other product. Id.; see also du Pont, 351 U.S. at 393 ("Determination of the competitive market for commodities depends on how different from one another are the offered commodities in character or use, how far buyers will go to substitute one commodity for another.").

The Supreme Court has also recognized the existence of submarkets within a larger product market. Brown Shoe Co. v. United States, 370 U.S. 294, 325

- 13 -

(1962).  The boundaries of such a submarket are defined by such factors as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, and sensitivity to price changes and specialized vendors.  Id.  "The same proof which establishes the existence of a relevant product market also shows (or...fails to show) the existence of a product submarket."  1 ABA Section of Antitrust Law, Antitrust Law Developments 521 (4th ed. 1997) (quoting H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1540 (8th Cir. 1989)).  Thus, the general standard articulated in du Pont, in conjunction with the specific factors announced in Brown Shoe, provides the applicable standard for defining the relevant product market.

### 1.  Products of a single manufacturer or brand

In general, a manufacturer's own products do not themselves comprise a relevant product market.  1 ABA Section of Antitrust Law, supra, 527-28.  As the Supreme Court stated in du Pont:

> [W]here there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist merely because the product said to be monopolized differs from others.  If it were not so, only physically identical products would be a part of the market.

351 U.S. at 394.  Similarly, we have said that "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product."

TV Communications Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1025 (10th Cir. 1992) (holding that TNT is not relevant product market for purposes of Sherman Act). Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market. Disenos Artisticos E. Industriales, S.A. v. Work, 714 F. Supp. 46, 47-48 (E.D.N.Y. 1989) (defining relevant product market as market for high quality decorative giftware, despite "intense brand loyalty" among some customers for certain brand of porcelain figurine); see also Grappone, Inc. v. Subaru of New England, Inc., 858 F.2d 792, 797 (1st Cir. 1988) (Although "virtually every seller of a branded product has *some* customers who especially prefer its product," that fact alone does not show market power (emphasis in original).).

Nonetheless, products of a single manufacturer may in rare circumstances constitute a relevant product market. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481-82 (1992). In Eastman Kodak Co. v. Image Technical Services, Inc., the Supreme Court held that the relevant product market must be defined in terms of the choices of products and services available to Kodak equipment owners. Id. Because Kodak equipment owners were locked into Kodak parts and services, Kodak parts and services were not interchangeable with the parts and services of other manufacturers. See id. at 482. Accordingly,

only those companies that serviced Kodak machines comprised the relevant product market. Id.[3]

The Supreme Court has acknowledged in dicta that the soft drink industry is a prototypical example of an industry in which products are so interchangeable that control over one brand cannot be an illegal monopoly. The Court said that "this power that...soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly." du Pont, 351 U.S. at 393. "[T]here are certain differences in the formulae for soft drinks but one can hardly say that each one is an illegal monopoly." Id.; see also Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 696 F. Supp. 97, 131 (D. Del. 1988) ("There can be no serious dispute that Coca-Cola products are in competition with many other soft drinks."); Barq's Inc. v. Barq's Beverages, Inc., 677 F. Supp. 449, 455 (E.D. La. 1987) ("Based upon the theory of interchangeability, which allows for closely related product substitutes to be considered in the relevant market, the appropriate unit here is all soft drinks. Barq's root beer is merely one soft drink in a market of competing soft drinks.").

---

[3]See also Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Okla., 468 U.S. 85, 111-12 (1984) (holding that distinct market exists for NCAA college football broadcasts); Int'l Boxing Club of N.Y., Inc. v. United States, 358 U.S. 242, 249-52 (1959) (holding that relevant market was properly defined as promotion of championship boxing contests, not all professional boxing events).

Accordingly, Pepsi branded beverage products cannot alone comprise a relevant product market. Plaintiffs attempt to avoid this conclusion by offering evidence that consumers are "brand loyal" to Pepsi branded products. Mr. Davis, one of the grocery store owners in this case, testified that in his experience, people are brand loyal to Pepsi because instead of substituting Coke if they do not find Pepsi on the grocery store shelves they look elsewhere for Pepsi. Brand loyalty of consumers to particular soft drinks is an insufficient basis for concluding that Pepsi constitutes a relevant product market. Plaintiffs have offered no other evidence to show that Pepsi products are not reasonably interchangeable with Coke products or other branded soft drinks.

Nor have Plaintiffs offered any evidence pertaining to the specific factors listed by the Supreme Court in <u>Brown Shoe</u>, such as evidence that Pepsi prices are insensitive to price changes in other branded soft drinks. <u>See</u> 370 U.S. at 325. In short, Plaintiffs have offered no evidence – other than their own testimony pertaining to brand loyalty – to prove that Pepsi branded products constitute a market distinct from other soft drink products.

### 2. Cluster markets

Courts also recognize the existence of "cluster markets." A "cluster market" exists where a seller provides a full line of products or services that

create a separate product market consisting of that "cluster" of products or services. See United States v. Phillipsburg Nat'l Bank & Trust Co., 399 U.S. 350, 360-61 (1970) (holding that products and services offered by full-service banks constituted cluster market); United States v. Grinnell Corp., 384 U.S. 563, 572-73 (1966) (holding that central station protective services including automated burglar alarms, automated fire alarms, sprinkler services, and watch signal services constituted cluster market); United States v. Phila. Nat'l Bank, 374 U.S. 321, 356-57 (1963) (holding that products and services offered by commercial banks constituted cluster market).

A cluster market exists only when the "cluster" is *itself* an object of consumer demand. See Westman Comm'n Co. v. Hobart Int'l, Inc., 796 F.2d 1216, 1221 (10th Cir. 1986) (rejecting cluster market approach where cluster was not itself the object of consumer demand). In other words, the cluster approach is only appropriate where "'the product package is significantly different from, and appeals to buyers on a different basis from, the individual products considered separately.'" Id. (quoting JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc., 698 F.2d 1011, 1016-17 (9th Cir. 1983)).

Plaintiffs argue that even if Pepsi products themselves cannot constitute a relevant product market, Bottling Group distributes a full line of beverage products that together constitute a cluster market over which Bottling Group has

- 18 -

monopoly power. Specifically, Plaintiffs point out that Bottling Group distributes approximately 60 Pepsi branded products, approximately 25-30 Dr. Pepper branded products, and other branded apple juices, teas, sport drinks, and water products. In total, Bottling Group distributes approximately 155 branded beverage products.

There are two problems with Plaintiffs' argument. First, Plaintiffs have presented no evidence that the 155 different products distributed by Bottling Group together constitute a cluster that is *itself* the object of consumer demand, as our precedent requires. See Westman, 796 F.2d at 1221. Plaintiffs offer no evidence establishing that the package of grocery products distributed by Bottling Group appeals to grocery stores on a different level than Pepsi, Dr. Pepper, Slice, etc. considered separately. They have not offered evidence, for example, that Plaintiffs' customers enter the store with the intent to purchase both Pepsi and Dr. Pepper together and the absence of one of those products would cause the customer to go to another store to purchase both. Nor have they introduced evidence that grocery stores significantly benefit from purchasing Dr. Pepper products and Pepsi products as a package rather than individually.

Second, Plaintiffs do not argue that Bottling Group has monopoly power even if the product market is defined as a cluster market. If a cluster market exists, then presumably that market would include all distributors who provide a

similar cluster of soft drink or other beverage products and affiliated services to grocery stores for retail sale in the relevant geographic market. Plaintiffs have come forward with no evidence demonstrating that Bottling Group has monopoly power even in this more narrowly defined product market.[4] Plaintiffs appear to misunderstand the significance of a cluster market – the fact that an entity distributes a number of different products does not of itself give it monopoly power in a "cluster market"; it merely defines the product(s)/service(s) offered by the distributor as a package and then limits the relevant product market to those entities that can offer a competitive package.

Accordingly, the district court did not err in holding that the products exclusively distributed by Bottling Group in the Tulsa area cannot, as a matter of law, constitute a relevant product market.[5]

---

[4]Plaintiffs did offer evidence of the market share of the individual products distributed by Bottling Group; however, evidence of the market share of the products *as a product cluster* is not provided.

[5]Plaintiffs may have argued below that Bottling Group had monopoly power in a product market more broadly defined as the market for all soft drink and other beverage products distributed to retail grocers. By failing to re-assert this argument on appeal, however, Plaintiffs have waived it, and, in any event, the record does not support such a theory.

**CONCLUSION**

We hold that Plaintiffs failed to plead a claim under § 203(A) of the Oklahoma Antitrust Reform Act, and that their claims under §§ 203(B) and 203(C) of the Act require proof of a relevant product market. We further hold that Plaintiffs have failed to establish a genuine dispute that the products distributed by Bottling Group alone constitute a relevant product market. Accordingly, the district court's grant of summary judgment in favor of Bottling Group and Holdings is AFFIRMED.