**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**December 31, 2013**

**TENTH CIRCUIT**

---

GERALD HANSEN ELLER,

      Plaintiff - Appellant,

v.

      No. 12-1419

TRANS UNION, LLC,

      Defendant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:09-CV-0040-WJM-KMT)**

---

Anthony Viorst, The Viorst Law Offices, P.C., Denver, Colorado, appearing for Appellant.

Paul L. Myers, Strasburger & Price, LLP, Dallas, Texas (Benton Barton, Hall & Evans, LLC, Denver, Colorado, Jadd F. Masso and Martin E. Thornwaite, Strasburger & Price, LLP, Dallas, Texas, with him on the brief), appearing for Appellee.

---

Before **HARTZ, McKAY,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

      This case arises from longstanding allegations that Trans Union, LLC ("Trans Union") included erroneous entries on Gerald Eller's credit reports since the late 1990s.

The present action, which asserts claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, is the third lawsuit Mr. Eller has filed against Trans Union since 1999. The first two suits were settled for undisclosed sums in 2001 and 2006.

Mr. Eller's second amended complaint in this case alleged that Trans Union willfully and negligently violated the FCRA by reporting erroneous entries on his credit report. Trans Union counterclaimed against Mr. Eller, contending that his claims were frivolous and brought in bad faith, and that Mr. Eller had breached the terms of the 2006 settlement agreement. The trial court granted judgment as a matter of law to Trans Union on Mr. Eller's claim that Trans Union willfully violated the FCRA. The case reached the jury on Mr. Eller's claim that Trans Union negligently violated the FCRA as well as Trans Union's counterclaims. The jury returned a verdict in Trans Union's favor on all issues.

Mr. Eller—who appeared pro se at trial but is represented by counsel on appeal—argues the district court erred by (1) excluding documentary evidence of Mr. Eller's prior issues with Trans Union; (2) denying Mr. Eller's request for two witnesses to testify by telephone; and (3) instructing the jury that claims related to Mr. Eller's student loans, which he contends were tried by implied consent, were not compensable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

In 1997, Mr. Eller began receiving phone calls and collection notices in the mail directed at a man named Jerry Willard. In 1997, Mr. Eller spoke to a collection agency representative on the phone, explaining that he was not Mr. Willard, and temporarily resolved the matter. But in 1998, Mr. Eller again received phone calls for Mr. Willard. Around that time, Mr. Eller applied for a credit card but was denied due to an adverse credit history.

Mr. Eller requested a credit report from Trans Union. When he received it, he found numerous adverse accounts listed under the name Jerry Willard. The report also noted that Jerry Willard was an alias for Mr. Eller. Mr. Eller asserted that he has never been known as Jerry Willard and that these entries on his credit report were false.

1. **Prior Litigation**

In November 1999, Mr. Eller, through an attorney, filed a lawsuit against Trans Union in Colorado state court concerning the erroneous credit reports, and particularly Trans Union's reporting of student loan debt that Mr. Eller asserted did not belong to him. After Trans Union removed the matter to federal court, the parties settled for an undisclosed sum in July 2001.

Mr. Eller—who had served in the United States Army (the "Army") from 1988 to 1991—re-enlisted after September 11, 2001. He served until 2004. During this time, Mr. Eller's problems with Trans Union apparently persisted. Mr. Eller contended that he was denied an air traffic controller position because of erroneous entries on his credit report.

He also asserted that his credit report prevented him from receiving a top secret security clearance.

While he was still in the Army, in December 2003, Mr. Eller hired attorney Robert Sola. On Mr. Eller's behalf, Mr. Sola filed another lawsuit against Trans Union in federal court, again alleging errors on Mr. Eller's credit report due to the inclusion of information about Jerry Willard. The matter settled in 2006 for an undisclosed sum. The 2006 settlement agreement required Mr. Eller to provide timely notice to Trans Union of any future inaccuracies in his credit report. Trans Union agreed in turn to timely investigate Mr. Eller's disputes.

In 2004, Mr. Eller was honorably discharged from the military for medical reasons. After his discharge, Mr. Eller hired attorney Patrick McLain to represent him in military proceedings to correct his Army record. Mr. Eller contended that his Army record contained mistakes associated with the erroneous credit reports he had been receiving from Trans Union. Mr. Eller's challenge to his military record was ultimately unsuccessful.

2. **Facts Giving Rise to Current Lawsuit**

According to Mr. Eller, he again began noticing questionable entries on his credit report in late 2007. In February 2008, Mr. Eller sent Trans Union and other credit reporting agencies a document titled "Final Notice," in which he alleged the credit reporting agencies were "wrongfully, willfully, and purposefully reporting inaccurate and

untruthful student loan information." Aplt. Appx. Vol. I at 192. Mr. Eller threatened to take legal action, *see id.* at 193, but did not bring suit at that point.

In December 2008, Mr. Eller received another Trans Union credit report, this time containing a report of a delinquent DirecTV account sought by the collection company NCO Financial. Mr. Eller later testified that this account was not his and that he suspected it belonged to Mr. Willard. Evidence at trial indicated that the NCO Financial account appeared on additional credit reports dated as early as March 2008, but Mr. Eller did not report the allegedly erroneous entry to Trans Union until he filed his initial complaint in January 2009.

## B. *Procedural Background*

### 1. **Complaint Amendment History**

Mr. Eller, proceeding pro se, filed his initial complaint in the present action in the United States District Court for the District of Colorado on January 9, 2009. He alleged that Trans Union committed negligent and willful violations of both the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Colorado Consumer Credit Reporting Act ("CCCRA"), Colo. Rev. Stat. 12-14.3-101 *et seq.* This original complaint included claims concerning various accounts reported by Trans Union, including the NCO Financial account and student loan accounts.[1]

---

[1] The initial complaint also named Experian Information Solutions, Inc. ("Experian") as a defendant. Mr. Eller's claims against Experian subsequently settled and are not part of this appeal.

After he filed his original complaint, Mr. Eller hired an attorney, Steven Nolan, who represented him for a brief time prior to trial. Through Mr. Nolan, Mr. Eller amended his complaint twice. In his Second Amended Complaint, filed September 18, 2009 by Mr. Nolan, Mr. Eller voluntarily dismissed all of his claims related to account entries other than the NCO Financial account. After the district court accepted the Second Amended Complaint but before trial, Mr. Nolan withdrew, and Mr. Eller proceeded pro se from that point forward.

On October 5, 2009, Trans Union filed a counterclaim against Mr. Eller, alleging that his claims were frivolous and brought in bad faith and that Mr. Eller had breached the terms of his 2006 settlement agreement with Trans Union by failing to notify Trans Union that he disputed the NCO Financial account report.

On December 8, 2009, Mr. Eller, proceeding pro se, moved to reassert the additional FCRA claims that he had voluntarily dismissed, including claims based on inaccurate reporting of his student loans. A magistrate judge recommended that the motion to amend be denied on the grounds of undue delay, prejudice, and futility. Aplt. Appx. Vol. I at 72-80. The magistrate judge also noted that the student loan claims were precluded by jurisdictional bars, including the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel. *Id.* at 77-79. The district court adopted the magistrate judge's recommendation and denied Mr. Eller leave to reassert his initial claims. Aplt. Appx. Vol. II at 695.

On January 5, 2012, at a pretrial conference, Trans Union's counsel reported that he had student loan documents prepared as trial exhibits if "Mr. Eller is allowed to get into anything related to student loans." *Id.* at 745-46. At the final trial preparation conference on September 21, 2012, the district court nevertheless ruled that Mr. Eller would not be permitted to present evidence of any claims other than those related to the NCO Financial account.

## 2. **Pretrial Motion for Telephonic Testimony**

On September 14, 2012, Mr. Eller timely filed a witness list enumerating the witnesses he expected to call at trial, including Mr. Sola, who resides in Portland, Oregon, and had been his attorney in his 2003 lawsuit against Trans Union; and Mr. McLain, who lives in Dallas, Texas, and had represented him in military proceedings to correct his Army record. *See* Aplt. Appx. Vol. I at 82.

On October 3, 2012—six days before trial was scheduled to begin—Mr. Eller moved to call certain witnesses, including Mr. Sola and Mr. McLain, to testify by telephone. *Id.* at 84. The next day, Mr. McLain submitted an affidavit stating he would be serving as counsel in a court martial proceeding in Incirlik, Turkey during the scheduled trial dates. *Id.* at 86. Trans Union opposed the request for telephonic testimony. *Id.* at 88.

Mr. Eller's remote testimony request was filed several days late under the district court's practice standards, which require that such requests be made at least 10 days before trial. Suppl. Appx. at 83. Nevertheless, the district court stated it would permit

-7-

two of Mr. Eller's witnesses—medical practitioners with the United States Department of Veterans Affairs (the "VA") who were unable to physically appear at trial due to their patient care obligations—to testify by telephone about the VA's treatment of Mr. Eller for anxiety and depression related to his credit woes.[2] The district court denied Mr. Eller's request as to Mr. Sola and Mr. McLain, however, "for lack of good cause shown." Aplt. Appx. Vol. I at 88.

3. **Trial**

The case was tried to a jury from October 9, 2012 through October 12, 2012. Mr. Eller represented himself. At the end of Mr. Eller's evidence, the district court granted judgment as a matter of law for Trans Union on Mr. Eller's claim that Trans Union had willfully violated the FCRA. *See* Aplt. Appx. Vol. II at 494; Fed. R. Civ. P. 50(a). The case proceeded to the jury on the remaining claims, including Mr. Eller's claim that Trans Union negligently violated the FCRA, his claims under Colorado law, and Trans Union's counterclaims against Mr. Eller.

---

[2] After Mr. Eller filed his request for telephonic testimony, the United States Attorney responded in support of this motion on behalf of the two VA employees, Dr. Robert Goos and Nurse Practitioner Marion Thornton, explaining that they would not be able to appear at trial due to their work responsibilities but could be made available to testify via brief phone calls. *See* Aplt. Appx. Vol. I at 93. The district court concluded that the United States Attorney's letter had shown good cause for these two witnesses to testify remotely. *Id.*

Although the district court stated that both Dr. Goos and Nurse Practitioner Thornton would be permitted to testify by phone, *id.*, Nurse Practitioner Thornton ultimately testified in person, *see* Aplt. Appx. Vol. II at 284-85.

At trial, Mr. Eller testified at length to his history of problems with Trans Union's inaccurate reporting of his credit history. Although the district court denied Mr. Eller's requests to present certain exhibits and witness testimony related to this history (as will be explained in further detail below), Mr. Eller was allowed to testify about Trans Union's earlier false reports as background to his claims relating to the NCO Financial account. Mr. Eller explains on appeal that he hoped this testimony would establish that Trans Union, which knew that Mr. Eller had experienced difficulties correcting his prior credit reports, failed to follow reasonable procedures to ensure the accuracy of his credit reports as required under the FCRA. *See* 15 U.S.C. § 1681e(b); *see also Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002) ("To prevail in a private civil action under § 607(b) [of the FCRA], a plaintiff must establish that . . . the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports.").

During his testimony, Mr. Eller repeatedly made references to the allegedly erroneous student loan reports contained in his Trans Union credit report. The district court sustained objections from Trans Union to the introduction of any evidence regarding the student loans. Mr. Eller was, however, permitted to introduce a 2008 Trans Union credit report that included reports of delinquent student loan accounts.

On cross-examination, Trans Union's counsel questioned Mr. Eller about the student loan accounts to which he had referred, attempting to impeach Mr. Eller's testimony that these accounts did not belong to him. On redirect, based on the scope of

cross-examination, Mr. Eller was permitted to testify that the student loan notations on his 2008 Trans Union credit reports were actually incorrect.

At the close of all evidence, the jury was instructed that the elements of Mr. Eller's FCRA and CCCRA claims required him to prove by a preponderance of the evidence that (1) inaccurate information was included in a consumer report regarding him; (2) the inaccuracy was due to Trans Union's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Mr. Eller suffered an injury; and (4) Mr. Eller's injury was caused by the inclusion of the inaccurate information. Aplt. Appx. Vol. I at 159.

The district court also instructed the jury, over Mr. Eller's objection, that it could "only award [Mr. Eller] damages, if any, which you find by a preponderance of the evidence [were] proximately caused by Trans Union's inclusion of the NCO Financial account on a consumer report." Aplt. Appx. Vol. II at 631-32. The instruction thus precluded the jury from considering Mr. Eller's student loan claims in its computation of damages.

The jury returned a verdict against Mr. Eller and in favor of Trans Union on all claims. It awarded Trans Union one dollar in damages on its counterclaims. The district court issued a final judgment in accordance with the jury verdict.

## II. **DISCUSSION**

On appeal, Mr. Eller contends that the district court erred when it (1) excluded five of Mr. Eller's exhibits concerning his history of complaints against Trans Union;

(2) denied Mr. Eller's requests for Mr. Sola and Mr. McLain to testify by telephone; and (3) instructed the jury that Mr. Eller's claims that Trans Union erroneously reported student loan debt on his credit report were not compensable. We briefly discuss the legal framework of Mr. Eller's suit under the FCRA and CCCRA before addressing each of these arguments in turn.

A. *Legal Framework*

Mr. Eller brought this action pursuant to both the FCRA and the analogous Colorado state law, the CCCRA. Specifically, Mr. Eller sued Trans Union pursuant to § 607(b) of the FCRA (15 U.S.C. § 1681e(b)) and the nearly identical Colorado state provision, Colo. Rev. Stat. § 12-14.3-103.5—both of which mandate compliance procedures for credit reporting agencies.

To prevail in his suit alleging either negligent or willful infringement of these sections, Mr. Eller had to establish that: (1) Trans Union failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) Mr. Eller suffered injury; and (4) Trans Union's failure caused his injury. *See Cassara*, 276 F.3d at 1217.

Mr. Eller's first two issues on appeal concern evidence meant to prove the first of these elements: that Trans Union failed to follow reasonable procedures to assure the

accuracy of Mr. Eller's credit reports.[3]  Mr. Eller contends that his long history of complaints against Trans Union dating back to the 1990s reveals a pattern whereby Trans Union's procedures consistently failed to adequately assure the accuracy of his credit reports.  *See* Aplt. Br. at 8-10.

Courts have held that evidence of events occurring outside the two-year statute of limitations on FCRA claims can be relevant to this inquiry because it may aid the jury in assessing the reasonableness of the defendant's compliance procedures.  *See, e.g.*, *Bryant v. TRW, Inc.*, 689 F.2d 72, 78-79 (6th Cir. 1982) (upholding admission of "defendant's prior contact with plaintiff and, in particular, its familiarity with plaintiff's troubled credit history" as relevant for the jury to assess whether the defendant followed reasonable procedures to assure credit report accuracy); *cf. Lazar v. Trans Union, LLC*, 195 F.R.D. 665, 671-72 (C.D. Cal. 2000) (refusing to strike portions of plaintiff's complaint that were barred by the statute of limitations because plaintiff's allegations of repeated mismanagement by Trans Union were relevant to whether Trans Union engaged in negligent or willful conduct).

To prevail on his claims, Mr. Eller had to prove not only that Trans Union failed to follow reasonable procedures given Mr. Eller's history, but also that it produced inaccurate "credit reports"—defined in the FCRA and CCCRA as a communication of

---

[3] Mr. Eller's remaining issue, which involves a jury instruction and the scope of claims tried at the district court, does not deal directly with the elements of his claims under the FCRA or the CCCRA.

credit information to a third party, *see* 15 U.S.C. § 1681a(d)—that were the proximate cause of his injuries. *See Cassara*, 276 F.3d at 1217.

## B. *Analysis*

### 1. **Evidentiary Exclusions**

During his case-in-chief at trial, Mr. Eller sought to admit a variety of documents that predated the alleged actionable misconduct in the present action. He was attempting to prove that Trans Union did not follow reasonable procedures to ensure the accuracy of its credit reports for Mr. Eller given previous errors in his credit reports. These documents included: (1) Exhibit 1—an allegedly inaccurate Trans Union credit report from 1999; (2) Exhibit 11—an allegedly inaccurate Trans Union credit report from February 2002; (3) Exhibit 12—an allegedly inaccurate Trans Union credit report from March 2002; (4) Exhibit 31—a letter from Mr. Eller's prior counsel, Mr. Sola, to Trans Union's counsel in September 2004 alleging that Trans Union had committed a number of FCRA violations; and (5) Exhibit 55—an excerpt of a letter from Mr. Eller's prior counsel, Mr. McLain, to military authorities suggesting a connection between errors in Mr. Eller's military records and his legal struggles with Trans Union.

Trans Union objected to each of these five documents on the following grounds: Exhibit 1—relevance; Exhibits 11 and 12—relevance and authenticity; Exhibits 31 and

55—authenticity and hearsay. The district court sustained Trans Union's objections as to all five of these exhibits.[4]

a. *Standard of review*

We review the district court's exclusion of evidence for abuse of discretion. *See Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005). We will not reverse the district court's evidentiary ruling "absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Id.* (quoting *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995)). "Even if the trial judge 'abused his or her discretion in making a decision to exclude evidence, we will overlook the error as harmless unless a party's substantial right was affected.'" *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1146-47 (10th Cir. 2009) (quoting *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir. 1991)). [5]

---

[4] In all but the first instance, the district court did not specify the ground(s) on which it sustained Trans Union's objections, as will be discussed in further detail below.

[5] Trans Union argues that we should review the district court's exclusion of these exhibits for plain error because Mr. Eller did not properly preserve the issue for appeal.

Generally, a party may only appeal a district court's exclusion of evidence if the error affects a substantial right of the party and the party "informs the court of [the evidence's] substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a).

Trans Union contends Mr. Eller did not make a proper offer of proof "describ[ing] the evidence and what it tends to show" and "identify[ing] the grounds for admitting the evidence," *United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001); *see also* Aplee. Br. at 6.

Continued . . .

-14-

b. *Analysis*

The district court did not abuse its discretion by excluding any of the five exhibits at issue here. Exhibit 1 was properly excluded as cumulative evidence. The remaining four exhibits could properly be excluded on that same ground or on other, independently sufficient grounds.

i. Exhibit 1

Trans Union objected to Exhibit 1—Mr. Eller's Trans Union credit report from 1999—on relevance grounds. The district court sustained Trans Union's objection, noting that a credit report from thirteen years prior was not directly relevant to Mr. Eller's claims in the present suit that Trans Union violated the law by reporting the NCO Financial account. Aplt. Appx. Vol. II at 110. The court reassured Mr. Eller that he would be allowed to provide background information on the two prior lawsuits against Trans Union, *id.* at 111, and it invited Mr. Eller to prove his case "by other evidence that's more directly tied to this lawsuit and the events giving rise to [his] claims in this

---

Cont.

Mr. Eller responds that the substance of the exhibits at issue "was apparent from the context," Fed. R. Evid. 103(a)(2), because colloquies at trial revealed that the court was aware of the contents or nature of each of the exhibits at issue. *See* Aplt. Reply Br. at 1-3.

Mindful of Mr. Eller's pro se status at trial, we believe Mr. Eller made sufficient showings regarding the substance of the exhibits to preserve this issue for appeal. *See, e.g.*, Aplt. Appx. Vol. II at 110-11 (explaining the contents of Exhibit 1 and why he sought its admission).

lawsuit." *Id.*

We conclude that the district court did not abuse its discretion in excluding Exhibit 1 pursuant to Federal Rule of Evidence 403. Rule 403 permits the trial court to exclude evidence if its probative value is outweighed by the danger of various concerns, including "wasting time" and "needlessly preventing cumulative evidence." *Id.*; *see also United States v. Archuleta*, __ F.3d __ (10th Cir. 2013). Although the 1999 credit report likely satisfied Rules 401 and 402, which permit evidence that has "any tendency" to make a fact of consequence "more or less probable" to be admitted unless otherwise excluded, the district court properly concluded that Rule 403 considerations weighed against its admissibility. *See United States v. Mangiameli*, 668 F.2d 1172, 1176 (10th Cir. 1982) ("[T]he trial court, under Rule 403, may exclude otherwise admissible evidence after balancing its probative value against certain competing considerations set forth in the rule and concluding that the costs of the evidence outweigh its benefits.").

In particular, the district court noted that it was concerned with "wasting time": "[W]e'll be here for days if we're going to go through every single credit report you had since 1999 going forward." Aplt. Appx. Vol. II at 111. Because Mr. Eller was given an opportunity to testify about his 1999 credit report and his long history of issues with Trans Union more generally, we cannot say that the district court abused its discretion by excluding Exhibit 1 as cumulative evidence.

### ii. Exhibits 11 and 12

The same reasoning compels us to uphold the district court's decision to exclude

-16-

Exhibits 11 and 12 (the two 2002 credit reports). Trans Union objected to each on both relevance and authenticity grounds, and the district court sustained the objections without further comment. Aplt. Appx. Vol. II at 124, 133. Although the district court did not specifically indicate the ground(s) on which it excluded these two exhibits, we may "affirm on any ground adequately supported by the record." *Harvey v. United States*, 685 F.3d 939, 950 n.5 (10th Cir. 2012). And like the 1999 credit report, both of the 2002 credit reports were within the district court's discretion to exclude as cumulative and a waste of time. *See* Fed. R. Evid. 403.[6]

### iii. Exhibits 31 and 55

The district court acted within its discretion by excluding Exhibits 31 and 55 as well. Exhibit 31 was a composite exhibit (a compilation of documents) including a September 2004 letter from Mr. Eller's prior counsel, Mr. Sola, to Trans Union's prior counsel, describing Mr. Eller's claims against Trans Union up to that date. Trans Union objected to Exhibit 31 as hearsay, hearsay within hearsay, inadmissible settlement communications, and irrelevant. Aplt. Appx. Vol. II at 146; *see* Fed. R. Evid. 801, 802 (defining and rendering hearsay generally inadmissible); *id.* 805 (same for hearsay within

---

[6] Exhibits 11 and 12 could also be excluded because Mr. Eller failed to properly authenticate them. Unlike Exhibit 1, which was a credit report originated by Trans Union, Exhibits 11 and 12 originated with Mr. Eller and included handwriting or correspondence by third parties. The record does not indicate that Mr. Eller authenticated these documents as required under Federal Rules of Evidence 901 and 902. *See Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1391 (10th Cir. 1980) (noting that the proponent of documentary evidence must authenticate it sufficiently to support a finding that the document is what the proponent purports it is).

hearsay); *id.* 408(a) (settlement negotiations inadmissible). Exhibit 55, another composite exhibit, contained an excerpt from a memo by Mr. McLain, one of Mr. Eller's former attorneys, to military authorities attempting to correct errors on Mr. Eller's military record. Trans Union objected to this page of Exhibit 55 as inauthentic and hearsay. Aplt. Appx. Vol. II at 475-76. The district court sustained Trans Union's objections to Exhibits 31 and 55 without specifying the ground(s) on which it relied to exclude them. *Id.* at 146, 476.

We conclude that both letters were properly excluded as hearsay—out-of-court statements of declarants offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Mr. Eller has not raised any exception to the hearsay rule that would permit admission of these exhibits; instead, he argues that their admission was necessary because Mr. Sola and Mr. McLain were not permitted to testify, as will be explained below. But unavailability of the declarant, without more, does not suffice to overcome the general prohibition on hearsay. *See id.* 804(b) (listing narrow exceptions to hearsay rule when declarant is unavailable); *id.* 807 (residual exception applies only if demanding four-step test is satisfied).[7]

------

[7] In addition, as with Exhibits 11 and 12 above, Mr. Eller appears to have failed to authenticate Exhibits 31 and 55. *See* Fed. R. Evid. 901, 902; *see also Amoco Prod. Co.*, 619 F.2d at 1391.

We further note that the same Rule 403 analysis that the district court performed on Exhibit 1 could apply to exclude these two exhibits as well because they constituted cumulative evidence of Mr. Eller's longstanding difficulties with Trans Union.[8]

The district court did not abuse its discretion by excluding these exhibits.[9]

## 2. **Telephonic Testimony**

As noted above, the district court found that Mr. Eller had not shown good cause for his former attorneys, Mr. Sola and Mr. McLain, to testify by telephone. Mr. Sola, who is based in Portland, Oregon, was expected to testify about Mr. Eller's 2003 lawsuit against Trans Union. Mr. McLain, who submitted an affidavit stating that he would be in

---

[8] Although Trans Union specifically objected to Exhibit 31 as irrelevant, *see* Aplt. Appx. Vol. II at 146, it did not mention relevance in its objection to Exhibit 55, *id.* at 475-76. But because the two exhibits are similar in content, they are of comparable relevance, and we observe that both could be considered cumulative here.

[9] Even if the district court did abuse its discretion by refusing to admit any of the five exhibits at issue, any error is harmless. To achieve reversal, Mr. Eller would have to show that the district court's error prejudiced his substantial rights. *See* Fed. R. Civ. P. 61; *Abraham v. BP Am. Prod. Co.*, 685 F.3d 1196, 1202 (10th Cir. 2012). Mr. Eller cannot make that showing here.

Mr. Eller contends that all five exhibits were necessary to present evidence of Mr. Eller's history with Trans Union, revealing that Trans Union was aware of the longstanding confusion of Jerry Willard for Mr. Eller and consequently should have taken additional precautionary measures to ensure that Mr. Eller's credit report was accurate. But the district court specifically instructed Mr. Eller that he was welcome to testify to his history and background with Trans Union himself, and he did so at length. There is no indication that additional evidence corroborating this testimony would have swayed the jury—much less that Mr. Eller would have prevailed on all required elements of an FCRA claim, including providing proof of an erroneous credit report shared with a third party and proximate causation of damages. Thus, any error was harmless.

Turkey for court martial proceedings during trial, was expected to testify about his efforts to correct Mr. Eller's military record, and in particular a letter he had written to military authorities positing a connection between mistakes in Mr. Eller's military record and his legal struggles with Trans Union.

Mr. Eller now contends the district court abused its discretion by not permitting Mr. Sola and Mr. McLain to testify by telephone. We disagree.

a. *Legal framework*

Rule 43 of the Federal Rules of Civil Procedure provides that testimony by contemporaneous transmission (by telephone or videoconference, for instance) may be taken in open court "[f]or good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). *See, e.g.*, *Barrera-Quintero v. Holder*, 699 F.3d 1239, 1248-49 (10th Cir. 2012) (upholding, over petitioner's procedural due process objections, the use of telephonic testimony in a removal proceeding where the witness was located hundreds of miles away from the hearing and there was no need for the witness "to be confronted in person").

b. *Standard of review*

Like other evidentiary rulings, a district court's decision whether to allow remote testimony pursuant to Rule 43(a) is reviewed for abuse of discretion. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) ("Evidentiary rulings are reviewed for abuse of discretion." (citing *General Elec. Co. v.*

*Joiner*, 552 U.S. 136, 141-42 (1997))); *see also Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed Cir. 2005).

    c. *Analysis*

We hold the district court did not abuse its discretion by refusing to permit Mr. Sola and Mr. McLain to testify telephonically.  Mr. Eller did not make a sufficient showing of good cause to justify making arrangements for them to testify remotely—nor was the district court required to accommodate his request in any case.

Rule 43(a), which allows for remote testimony, is by its own terms permissive and not mandatory:  "For good cause in compelling circumstances and with appropriate safeguards, the court *may* permit testimony in open court by contemporaneous transmission from a different location."  Fed. R. Civ. P. 43(a) (emphasis added).[10]

As the Advisory Committee Notes to Rule 43(a) explain, the rule is intended to permit remote testimony when a witness's inability to attend trial is the result of "unexpected reasons, such as accident or illness," and not when it is merely "inconvenient for the witness to attend the trial."  Fed. R. Civ. P. 43(a) advisory committee's note.  Courts most frequently allow remote testimony in special

---

    [10] Courts have interpreted similar language elsewhere in the Federal Rules of Civil Procedure as permissive and not mandatory.  Rule 6(b), for instance, states:  "When an act may or must be done within a specified time, the court *may*, for good cause, extend the time . . . ."  Fed. R. Civ. P. 6(b) (emphasis added).  "The rule's requirements are quite flexible, and the district judge enjoys broad discretion to grant or deny an extension, but several courts have made it clear that an enlargement of the time period is by no means a matter of right."  4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (3d ed. 2002) (citing cases).

-21-

circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom. *See, e.g.*, *Parkhurst v. Bell*, 567 F.3d 995, 997, 1002-04 (8th Cir. 2009) (child victim of sexual abuse); *Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011) (unpublished) (three witnesses posed security threats and the fourth would be deprived of necessary mental health support if he had to testify in person).

Mr. Eller correctly observes that courts have sometimes upheld the use of remote testimony in instances where the witness was located far from the site of the trial or hearing. *See, e.g.*, *Barrera-Quintero*, 699 F.3d at 1248-49; *Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1186 (9th Cir. 2000); *United States v. Gigante*, 971 F. Supp. 755, 756, 758 (E.D.N.Y. 1997); *Greene v. Prunty*, 938 F. Supp. 637, 639-40 & n.2 (S.D. Cal. 1996); *Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*, 756 F. Supp. 1393, 1398 n.2 (D. Or. 1990). But none of these cases addressed what constitutes "good cause." More important, Mr. Eller cites no case in which an appellate court has held that a trial court abused its discretion by *not* allowing remote testimony.

In short, the district court was under no obligation to permit Mr. Eller to call his witnesses to the stand telephonically. Furthermore, Mr. Eller failed to make an adequate showing under Rule 43(a).

With regard to Mr. Sola, Mr. Eller proffered no "unexpected reason[]" for Mr. Sola's absence from trial. Fed. R. Civ. P. 43(a) advisory committee's note. Indeed, Mr. Eller knew well in advance of trial that Mr. Sola was based in Portland, Oregon, and he

-22-

could have made arrangements ahead of time for introducing Mr. Sola's testimony, by deposition for instance.

Mr. Eller presented a stronger case with respect to Mr. McLain, who submitted an affidavit stating he would be in Turkey for a court martial proceeding at the time of trial. Mr. McLain's affidavit, *see* Aplt. Appx. Vol. I at 86, indicated that it was more than "inconvenient for [him] to attend trial," Fed. R. Civ. P. 43(a) advisory committee's note; however, there was no evidence to suggest that Mr. McLain's trip to Turkey arose for "unexpected reasons," as is typically required in a showing of good cause for telephonic testimony, *id.* As with Mr. Sola in Portland, Mr. McLain was based far from Colorado— in Dallas, Texas. In these circumstances, Mr. Eller could (and perhaps should) have foreseen that Mr. McLain might not be available for trial and made alternative arrangements for his testimony.

Finally, Mr. Eller has offered no indication that either Mr. Sola's or Mr. McLain's testimony was necessary to his case. He did not make a specific proffer at the district court of how Mr. Sola and Mr. McLain would have testified had they been permitted to do so. On appeal, Mr. Eller contends only that his former attorneys could have provided "background information" on his legal struggles with Trans Union. Aplt. Br. at 14. But as has already been noted, Mr. Eller was provided ample opportunity to testify about his past issues with Trans Union in his own testimony.

For these reasons, we hold that the district court did not abuse its discretion by preventing Mr. Sola and Mr. McLain from testifying telephonically.

3. **Student Loan Claims**

As explained above, Mr. Eller's original complaint contained claims concerning student loans in addition to the NCO Financial account. Mr. Eller's second amended complaint removed these additional claims, and Mr. Eller was denied leave to reassert them before trial. The district court sustained Trans Union's objections to the introduction of evidence about his student loan claims on Mr. Eller's direct examination. Nevertheless, Mr. Eller did testify on cross-examination and redirect regarding student loan account notations on his 2008 Trans Union credit report.

At the close of trial, the jury was instructed that it could "only award [Mr. Eller] damages, if any, which you find by a preponderance of evidence [were] proximately caused by Trans Union's inclusion of the NCO Financial account on a consumer report." Aplt. Appx. Vol. II at 631-32. Mr. Eller contends that this instruction erroneously precluded the jury from considering his student loan claims, which he now asserts were tried by implied consent because Trans Union introduced evidence related to the loans on cross-examination.

a. *Legal framework*

Issues outside the complaint may be tried by implied consent pursuant to Federal Rule of Civil Procedure 15(b)(2). "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." *Id.*

-24-

"A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Green Cnty. Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004); *see also Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir. 1982) ("Implied consent is found where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection.").

b. *Standard of review*

Although a trial court's decision to give a certain jury instruction is typically reviewed for abuse of discretion, *see Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012), we are limited to plain error review in this instance because Mr. Eller did not preserve his claim of error by objecting to the challenged jury instruction at trial. *See* Fed R. Civ. P. 51(c), (d)(2).

Mr. Eller contends that he objected, albeit "inartful[ly]," to the proposed instruction precluding the jury from awarding damages related to his student loan claims. *See* Aplt. Reply Br. at 7 (citing Aplt. Appx. Vol. II at 613-14).  When Trans Union argued that a limiting instruction was required to keep the jury from improperly considering student loan account information when assessing damages, Mr. Eller responded:

> I was questioned about the student loans, and the defendants tried to show through my credit report that—is this student loan yours; is this student loan yours, and they couldn't even—they claim I had a student loan [in] 06,

-25-

and they couldn't even show it on the credit report. Although they inferred to the jury that it appeared and that it was an accurate and truthful piece of information on my credit report, they couldn't even show that it existed. So I guess I will just leave it at that.

Aplt. Appx. Vol. II at 613-14.

Mr. Eller's statement does not indicate a clear objection to the proposed instruction as required under Federal Rule of Civil Procedure 51(c)(1). *See id.* ("A party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); *United States v. Bader*, 678 F.3d 858, 867 (10th Cir. 2012) (describing a litigant's "obligation to lodge a timely and specific objection" to proposed jury instructions). Moreover, immediately after a brief recess— about ten minutes later—the district court asked Mr. Eller if he wished to "make any statement or objection for the record as to this instruction." *Id.* at 615. Mr. Eller responded: "No, your Honor." *Id.*

Because Mr. Eller specifically declined to object to the proposed instruction, as is required to preserve the issue for appeal, we may only review the district court's instruction for plain error. *See* Fed. R. Civ. P. 51(d)(2); *Bader*, 678 F.3d at 867. "Plain error occurs when there is (i) error, (ii), that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Bader*, 678 F.3d at 868 (quotations omitted).

c. *Analysis*

Our analysis stops at the first step of the plain error inquiry because we conclude

that the district court did not err by instructing the jury that Mr. Eller's student loan claims were not compensable.

Mr. Eller contends that the student loan issue should be treated as if it were part of the pleadings because it was tried by implied consent pursuant to Rule 15(b)(2). *See* Aplt. Br. at 18. We disagree. Our case law indicates that Trans Union could have impliedly consented to the trial of the student loan issue in one of two ways: by (1) introducing evidence on the issue or (2) failing to object when Mr. Eller introduced such evidence. *See Green Cnty. Food Mkt.*, 371 F.3d at 1280.

The latter option is plainly not satisfied because Trans Union consistently objected to Mr. Eller's attempts to discuss student loans at trial. *See* Aplt. Appx. Vol. II at 149-50, 161-62, 186. The district court repeatedly upheld Trans Union's objections, instructing the jury multiple times to disregard any testimony related to student loans and admonishing Mr. Eller that he had to limit his responses to Trans Union's cross-examination to comments regarding the NCO Financial account. *See, e.g.*, *id.* at 200.

Nor did Trans Union consent to try Mr. Eller's student loan claims by introducing evidence on the issue. Mr. Eller contends that by cross-examining him regarding student loan notations on his 2008 credit report, Trans Union essentially brought forth evidence on the matter. *See* Aplt. Br. at 19. But "implied consent cannot be based on the introduction of evidence that is relevant to an issue already in the case when there is no indication that the party presenting the evidence intended to raise a new issue." *Green Cnty. Food Mkt.*, 371 F.3d at 1280. Trans Union argues that its cross-examination of Mr.

Eller regarding student loan documents was meant to impeach Mr. Eller, *see* Aplee. Br. at 33, and the trial transcript reflects that the district court permitted Trans Union to introduce these documents specifically for impeachment purposes. *See* Aplt. Appx. Vol. II at 372.

Because the record does not indicate that Trans Union impliedly consented to try the student loan issue, we cannot conclude that the district court erred by instructing the jury to consider only the NCO Financial account claim in its damages calculation. Accordingly, Mr. Eller cannot prevail on this claim under plain error review.

### III. **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.