FILED
United States Court of Appeals
Tenth Circuit

**August 19, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

BERNADINE R. VAUGHN,

      Plaintiff-Appellant,

v.

EPWORTH VILLA,

      Defendant-Appellee.

No. 07-6005

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-04-1433-F)**

---

Mark Hammons (Tamara Gowens with him on the briefs), Hammons, Gowens & Associates, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Gayle Barrett (Adam W. Childers with her on the brief), Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **KELLY**, **EBEL,** and **McCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

      Plaintiff-Appellant Bernadine R. Vaughn ("Vaughn") appeals the district

court's grant of summary judgment in favor of Defendant-Appellee Epworth

Villa.  At issue is Vaughn's allegation that she was retaliated against by Epworth

Villa for participating in the Equal Employment Opportunity Commission ("EEOC") process. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Vaughn was employed by Epworth Villa as a Certified Nurses Aid/Certified Medication Aid from 1991 until 2005. "Epworth Villa is a not-for-profit, continuing care retirement community related to the Oklahoma Conference of the United Methodist Church."

On April 28, 2004, Vaughn alleged that Epworth Villa discriminated against her and filed a complaint to this effect with the EEOC. According to Vaughn's complaint, she was discriminated against because of her age (49) and her race (black). Vaughn alleged that this discrimination occurred when she was disciplined for making errors with respect to a patient's medical records, while a younger, white employee was not disciplined for making the same errors.

At some point after filing her complaint with the EEOC, Vaughn provided the EEOC with several pages of unredacted medical records concerning an Epworth Villa patient. These records included a "medication sheet," which detailed the patient's medication regimen, and "an individual patient's narcotics record," which detailed the patient's medication schedule. Vaughn provided these records to the EEOC believing they would bolster her discrimination claims. To that end, Vaughn asserted that the records contained errors similar to those for

- 2 -

which she had been disciplined, but because the errors were committed by a younger, white employee, that employee had not been disciplined for the same conduct.

On May 23, 2005, over a year after Vaughn had filed her charge of discrimination with the EEOC (which remained pending), Epworth Villa learned about Vaughn's disclosure of the unredacted medical records. Shortly thereafter, Epworth Villa reported the incident to the Oklahoma Department of Health, which advised Epworth Villa to open an investigation into the matter.[1] Vaughn ultimately admitted that she copied and released the unredacted medical records and that one of her responsibilities at Epworth Villa was "practic[ing] confidentiality concerning residents' records, care and activities."

On June 1, 2005, Epworth Villa terminated Vaughn's employment. A subsequent letter from Epworth Villa to the Department of Health indicated that Vaughn was "[t]erminated ... for cause because she, without authorization and against policy and procedure, copied and removed from the property confidential document[s]; i.e. medical records of [an Epworth Villa resident] and staff pay records, then disclosed said records to a third party."

---

[1] Epworth Villa reported the incident to the Oklahoma Department of Health pursuant to § 310:677-1-4(a) of the Oklahoma Administrative Code, which provides that "[a]n employer shall report to the Department any allegation of ... misappropriation of client's or resident's property against the employer's nurse aide."

Following Vaughn's termination, the Department of Health also investigated Vaughn's conduct. After a hearing on the matter, an Administrative Law Judge concluded that Vaughn "violated [Oklahoma] law when she copied [the] records, in essence taking the information, which is a property right, without permission, and therefore is guilty of the act of misappropriation of property belonging to a Resident." An annotation to this effect was made in Vaughn's official record with the Oklahoma Nurse's Aide Registry.

In response to her termination, Vaughn filed suit against Epworth Villa, asserting among other actions, that she was terminated in retaliation for her participation in the EEOC process. The district court granted Epworth Villa's motion for summary judgment with respect to Vaughn's retaliation claim. In doing so, the district court concluded that Vaughn had failed to establish a prima facie case of retaliation. The court also noted, however, that even if Vaughn had established a prima facie case of retaliation, she had not established that Epworth Villa's purported non-retaliatory reason for terminating her was pretextual. At Vaughn's request, the district court thereafter dismissed with prejudice her remaining causes of her action, thus resulting in a final judgment for purposes of appeal. Vaughn now appeals the district court's dismissal of her retaliation claim.

## II.  DISCUSSION

### A.  Standard of Review

"This court reviews the district court's summary judgment decision *de novo*, viewing the evidence in the light most favorable to the non-moving party; in this case, in [Vaughn's] favor."  Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 679-80 (10th Cir. 2007).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Finally, we may affirm on any basis supported by the record, even though not relied on by the district court."  Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008).

### B.  Title VII Retaliation

"In analyzing retaliation claims, we apply the three-part test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792  (1973)."  Somoza v. Univ. of Denver, 513 F.3d 1206, 1211 (10th Cir. 2008).  Pursuant to this test, Vaughn "bears the initial burden of establishing a prima facie case of retaliation."  Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006).  If Vaughn meets this burden, then Epworth Villa "must offer a legitimate, non-retaliatory reason for [its] employment action" against Vaughn.  Id.  Should Epworth Villa satisfy this burden, Vaughn "bears the ultimate burden of demonstrating that [Epworth Villa's] proffered reason is pretextual."  Id.

### 1.  Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, Vaughn "must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1123-24 (10th Cir. 2007) (quotation omitted).  In this case, it is undisputed that Vaughn suffered an adverse employment action: she was terminated.  See, e.g., Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1228 (10th Cir. 2008) (stating "termination ... is clearly an adverse employment action.").  Similarly, it is undisputed that Epworth Villa premised Vaughn's termination on her disclosure of the unredacted medical records to the EEOC.  Thus, in determining whether Vaughn has established a prima facie case of retaliation, this court need only consider whether Vaughn's disclosure of the unredacted medical records was a protected activity.

The district court concluded that Vaughn did not engage in a protected activity when she supplied the unredacted medical records to the EEOC.  In reaching this conclusion, the district court used a "rebuttable presumption" test. Under this test, the court reasoned that an employee's "dishonest or disloyal conduct" while participating in a Title VII proceeding was presumptively unreasonable and an unprotected activity unless the employee had no other reasonable choice in order to advance the EEOC claim.  Thus, in this case, the court specifically considered whether Vaughn had no other choice but to submit

- 6 -

"a patient's confidential personal health information ... to the EEOC." The district court answered this question negatively, concluding that a variety of more sensible choices were available to Vaughn: "Plaintiff could have easily redacted the patient's name from the records. She could have obtained the patient's consent. Plaintiff could have simply prepared an affidavit attesting to what she believed were charting errors by other employees and defendant's failure to discipline those employees." With these potential alternatives in mind, the district court concluded "as a matter of law that [Vaughn's] copying and disclosure of the confidential personal health information in defendant's records was not 'protected activity.'" We disagree with the district court's utilization of this analysis under the participation clause.

"Protected activities fall into two distinct categories: participation or opposition." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). The "participation clause" provides that an employer may not retaliate against an employee "because [the employee] has ... participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C.A. § 2000e-3(a) (§ 704(a)) (emphasis added). "The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights." Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999).

The "opposition clause," meanwhile, provides that an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C.A. § 2000e-3(a).

> The distinction between participation clause protection and opposition clause protection is significant because the scope of protection is different. Activities under the participation clause are essential to the machinery set up by Title VII. As such, the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause.

Laughlin, 149 F.3d at 259 n.4 (citations, quotations omitted). In this case, there appears to be no dispute that Vaughn's conduct should be assessed in accordance with the participation clause, as the conduct at issue – her provision of the unredacted medical records to the EEOC – occurred subsequent to the time she filed her Title VII complaint and was rooted in her Title VII participation.

This court has not yet interpreted the scope of the participation clause vis-à-vis the opposition clause. Nevertheless, a variety of our sister circuits have considered the matter, and to this end, the Third Circuit recently stated:

> Courts that have interpreted the "participation clause" have held that it offers much broader protection to Title VII employees than does the "opposition clause." See, e.g., Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003) ("[C]ourts have consistently recognized [that] the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations."); Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (noting that "courts have generally granted less protection for opposition than for participation" and that the participation clause offers "exceptionally broad protection"); Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978) (stating that the opposition clause serves "a more limited purpose" and is narrower than the participation clause);

- 8 -

> Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1006 n.18
> (5th Cir. 1969) (noting that the participation clause provides
> "exceptionally broad" protection for employees covered by Title
> VII).

Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006).  Based on the

participation clause's plain language, we believe the broad coverage afforded to

the clause by these courts is well founded.

"When interpreting the language of a statute, the starting point is always

the language of the statute itself.  If the language is clear and unambiguous, the

plain meaning of the statute controls."  McGraw v. Barnhart, 450 F.3d 493, 498

(10th Cir. 2006) (quotations omitted).  In this case, the participation clause

plainly provides that individuals may not be retaliated against when they

"participate[] in any manner in an investigation, proceeding, or hearing under"

Title VII.  42 U.S.C. § 2000e-3(a) (emphasis added).  We fail to see how this

language places the kind of obligation on the employee that the district court here

imposed – the obligation to resort only to honest and loyal conduct in advancing a

claim unless the employee proves that it is necessary to resort to other means.[2]

See Deravin v. Kerik, 335 F.3d 195 (2d Cir. 2003).  There, the Second Circuit

---

[2] We have no occasion in this case to consider whether the participation clause would protect an employee whose participation in a Title VII proceeding is a sham or is fraudulent before the hearing officer.  That situation is not before us and we express no opinion on whether the participation clause would protect such conduct – that is, whether "fraud on the court" should truly be considered "participation."

noted that "'[r]ead naturally, the word 'any' has an expansive meaning,' and thus, so long as 'Congress did not add any language limiting the breadth of that word,' the term 'any' must be given literal effect." Id. at 204 (quoting United States v. Gonzales, 520 U.S. 1, 5 (1997)). Accordingly, given the plain language of the participation clause, we must conclude that Vaughn engaged in a "protected activity" when she submitted the unredacted medical records to the EEOC.[3]

## 2. Legitimate, Non-Retaliatory Reason

Having concluded that Vaughn established a prima facie case of retaliation, we must next consider whether Epworth Villa can provide a legitimate and facially non-retaliatory reason for its decision to terminate Vaughn. Epworth Villa asserts that it terminated Vaughn because she violated the organization's policies and procedures regarding confidentiality when without authorization, she provided the unredacted medical records to the EEOC.[4] Vaughn does not appear

---

[3] Although the participation clause may be nearly absolute in theory, it may seldom be absolute in fact. When an employee violates an employer's policies, or for that matter the law, it will often be the case that the employer can assert a legitimate, non-retaliatory reason for taking an adverse employment action against the employee. And unless the employee can show that this reason was a pretext for retaliation, the employee will fail to meet her burden under the McDonnell Douglas burden shifting framework. Indeed, such a circumstance occurs in this case.

[4] In addition to violating Epworth Villa's policies and procedures, and perhaps Oklahoma law, it also appears that Vaughn's conduct may have violated federal law. Under the terms of the federal Health Insurance Portability Accountability Act ("HIPAA"), "[a] covered entity may not use or disclose protected health information, except as permitted or required by this subpart." 45

(continued...)

to dispute that she committed such a violation and her brief cannot be readily interpreted to challenge the notion that such a violation would constitute a legitimate and facially non-retaliatory reason for her termination.  Instead, Vaughn appears to argue that Epworth Villa's reasoning was pretextual.

### 3.  Pretext

Vaughn may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons."  Rivera v. City & County of Denver, 365 F.3d 912, 925 (10th Cir. 2004).  In an effort to make this showing, Vaughn's initial brief may be construed to make the following

---

[4](...continued)
C.F.R. § 164.502(a).  "Protected health information" includes "individually identifiable health information" that is "[t]ransmitted or maintained in any ... form or medium."  45 C.F.R. § 160.103.  "Individually identifiable health information," meanwhile, "[i]s created or received by a health care provider ...; and ... [r]elates to the past, present, or future physical or mental health or condition of an individual ... and ... identifies the individual...."  Id.

Vaughn does not appear to dispute that the medical information she transmitted to the EEOC was "protected health information" or that Epworth Villa is a "covered entity."  Instead, Vaughn contends that her conduct was excepted from HIPAA under 45 C.F.R. § 164.502(j), the whistleblower exception.  This argument in unavailing for several reasons.  Most basically, however, the whistleblower exception only applies to disclosures made to "a health oversight agency or public health authority," or "[a]n attorney retained by or on behalf of the" whistleblower, none of which is the EEOC.  Id.

- 11 -

arguments: (1) Epworth was not required to terminate Vaughn for her disclosure of the unredacted medical records, (2) Epworth Villa had difficulties managing its records, and (3) a fellow employee engaged in similar – though admittedly not identical – conduct and was not terminated.[5]  Each of these arguments is unavailing.

Unless Vaughn can show that other Epworth Villa employees were not terminated for engaging in the same or similar conduct – intentionally disclosing unredacted medical records to a third party – the fact that Epworth Villa was not required to terminate Vaughn does not give rise to an inference of pretext.  In the absence of any evidence that similarly situated employees were treated differently, it is perfectly plausible that Epworth Villa would terminate Vaughn – whether it was required to or not – for intentionally disclosing the unredacted medical records rather than for some retaliatory purpose.  It also seems to be of no moment that Epworth Villa had difficulties managing its records.  Perhaps

---

[5]  Additionally, Vaughn asserts for the first time in her reply brief that the following circumstances are indicative of pretext: (1) there was a close temporal proximity between Epworth Villa's discovery of Vaughn's disclosure of the unredacted medical records and her termination, (2) Epworth Villa was angry about Vaughn's conduct, and (3) Epworth Villa made allegedly inconsistent statements regarding Vaughn's termination. "This court does not ordinarily review issues raised for the first time in a reply brief" and to the extent these allegations attempt to expand the arguments made in Vaughn's primary brief, we decline to consider them here.  Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).

aware of these weaknesses in her argument, Vaughn contends that another Epworth Villa employee was not terminated when she engaged in similar conduct.

Although this argument is curtly developed in Vaughn's brief, based on the record, it appears that an Epworth Villa employee named Julia Ann Carruth twice removed "activity monitor logs" from the Epworth Villa campus and was only reprimanded for her conduct. On one of these occasions, the activity monitor log was evidently lost, only to be found in Epworth Villa's parking lot. Rather than containing any sort of patient medical information, however, the activity monitor logs only indicated the activities an Epworth Villa resident participated in. Based on these circumstances, we agree with the district court that Carruth's conduct was not sufficiently similar to Vaughn's to warrant an inference of pretext.

Critically, Vaughn and Carruth differ significantly in their levels of culpability. While Carruth's conduct can generally be characterized as wrongly removing material from the Epworth Villa campus, Vaughn intentionally supplied unredacted medical records concerning an Epworth Villa patient to a third party. The egregiousness of Vaughn's conduct vis-à-vis Carruth's is demonstrated by the fact that Vaughn's conduct likely violated both state and federal law by disclosing confidential information to a third party, while there is no indication that Carruth's conduct was similarly unlawful. Accordingly, it was not inconsistent for Epworth Villa to believe that a more severe punishment was warranted in Vaughn's case as compared to Carruth's.

Accordingly, Vaughn has not met her burden in showing that Epworth Villa's legitimate, non-retaliatory reason for terminating her was pretextual and therefore has failed to meet her burden under the McDonnell Douglas burden-shifting framework.

## C. Direct Evidence of Retaliation

As a final matter, Vaughn contends that instead of the McDonnell Douglas framework, this case should be analyzed under the framework developed by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). We disagree.

Under the Price Waterhouse framework, "[o]nce [a] plaintiff present[s] [direct] evidence that retaliation played a motivating part in defendant's decision to discharge him, it [becomes the] defendant's burden to prove by a preponderance that it '*would* have made the same decision' notwithstanding its retaliatory motive." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999). In arguing that direct evidence of retaliation exists in this case, Vaughn relies on Epworth Villa's assertion that it terminated her because she provided unredacted medical records to the EEOC. Based on this assertion, Vaughn contends that it was only because she provided the unredacted records to the EEOC, rather than some other third party, that Epworth Villa terminated her. This proves too much.

- 14 -

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 854 (10th Cir. 2007) (quotation omitted). "A statement that can plausibly be interpreted two different ways–one discriminatory and the other benign–does not directly reflect illegal animus, and, thus, does not constitute direct evidence." Id. at 855 (quotation omitted). And in this case, one can easily interpret Epworth Villa's statements benignly to mean that it would have terminated Vaughn for intentionally disclosing unredacted medical records to any third party.[6] After all, any such disclosure would have been contrary to the organization's policies and procedures, and ostensibly, the law. Accordingly, because Vaughn has not produced direct evidence of retaliation, the Price Waterhouse framework is inapplicable.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[6] As previously indicated, Epworth Villa asserted to the Oklahoma Department of Health that Vaughn was "[t]erminated ... for cause because she, without authorization and against policy and procedure, copied and removed from the property confidential document[s]; i.e. medical records of [an Epworth Villa resident] and staff pay records, then disclosed said records to a third party."

- 15 -