**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

MERRIER A. JACKSON TARTT,

    Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT
NO. 475,

    Defendant - Appellee.

No. 24-3110
(D.C. No. 2:23-CV-02146-EFM)
(D. Kan.)

_____

## ORDER AND JUDGMENT*
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Merrier A. Jackson Tartt is a Black woman with years of experience as an educator. She served for a time as principal of Junction City High School, which is part of the Unified School District No. 475 (the District) in the state of Kansas. After the District refused to renew her contract, Ms. Tartt sued the District for racial discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The parties engaged in discovery, and

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, _res judicata_, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

the District moved for summary judgment on all claims. Ms. Tartt opposed the motion, submitting affidavits to support her position. The district court granted summary judgment to the District.

Ms. Tartt now appeals, challenging both the district court's decision to disregard portions of the affidavits she submitted in opposing summary judgment and the grant of summary judgment to the District. We agree with Ms. Tartt only in part. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the district court improperly disregarded a portion of an affidavit submitted by Ms. Tartt in opposition to the District's motion for summary judgment. Under these circumstances, we must remand for further consideration of her discrimination claim under Title VII. We otherwise affirm.

**I**[1]

**A**

Ms. Tartt spent much of her career working in struggling schools in Alabama, where she performed admirably. Dr. Reginald Eggleston, the superintendent for the District, knew Ms. Tartt from her work in Alabama. In

---

[1] We take the facts from the statements of uncontroverted facts in the parties' summary-judgment briefs before the district court. No party disputes the facts on which we rely, except as we specifically note. We use these summary judgment briefs, rather than the factual contentions recited in the district court's pretrial order, in light of some stated factual disputes and our duty to "review summary judgment de novo." *Marcantel* v. *Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) (quoting *Gutierrez* v. *Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)).

2

the summer of 2020, Dr. Eggleston recommended Ms. Tartt apply for a position within the District. After joining the District and changing positions several times, she ultimately served as interim principal for Junction City High School (JCHS) for the latter part of the 2020–21 school year. Ms. Tartt then was hired as principal of JCHS for the 2021–22 school year. The District does not dispute that, at that time, JCHS needed "[t]urning around."[2] RII.269, 452.

At the end of the 2020–21 school year, three of the four assistant principals at JCHS—Jeff Tanner, Doug Salee, and Becky Hickert—left their positions. Before Mr. Salee resigned, Ms. Tartt overheard him tell other staff about Ms. Tartt "not being our kind" and that they should come to him with problems. RI.44; RII.250. Ms. Tartt confronted Mr. Salee, who is White, interpreting his comments as racially charged. She reported his comments to human resources (HR), and Ms. Tartt was satisfied with HR's response. Three replacement assistant principals—Marci Fiorentino, Ruth Stephenson, and James Neff—started the following school year.

Ms. Tartt felt uncomfortable about some members of the District's Board of Education (Board). In particular, she thought Ron Johnson, who is White

---

[2] According to Ms. Tartt, the vacancy she filled came about because of what she calls "The Hijab Incident." RII.270. As she summarizes, "At the school board meeting on November 2, 2020, [former] JCHS principal Melissa Sharp was suspended indefinitely after an African American Muslim student complained on October 22, 2020 that she had been asked to remove her Islamic head scarf, known as a hijab, while walking in the school hallway." RII.270.

and had been a Board member since 2019, visited JCHS often to monitor her. In November 2021, Ms. Tartt messaged Dr. Debra Gustafson, the District's associate superintendent, "I don't know if there's something I have done?" RI.46; RII.254. Dr. Gustafson replied, "No, Ron Johnson is a racist and he's going after the only two black administrators we have in the district, [including] you . . . ." RI.46; RII.254. That same month, Dr. Gustafson texted her friend Margie Pinaire, "I was offended by Mary's post though because she indicated not liking how things are going in USD 475. Make no mistake, Hudson and Hatcher (Johnson and Hayden) are after Dr. E and Ms. Jackson"— and Ms. Pinaire responded, "racist."[3] RI.47.

In late 2021 and early 2022, the District's upper management fielded complaints about Ms. Tartt from a variety of JCHS employees. Around that time, athletic director Matt Westerhaus and the three assistant principals who started during the 2021–22 school year all announced they were leaving the school, at least partly because of Ms. Tartt.[4]

---

[3] "USD 475" is the District. "Dr. E" refers to Dr. Eggleston, the superintendent, who is Black. "Jackson" is Ms. Tartt's maiden name. The four last names in a row were Board members and candidates. No party explains who Mary is or describes her post, but nothing in our analysis turns on those details.

[4] While Ms. Tartt disputes that conditions at the school were as bad as the District contends, she does not controvert some employees complained or said they would leave in part because of her. *See* RII.257–62, 445–48.

4

**B**

In January 2022—the spring semester of Ms. Tartt's year as JCHS principal—Dr. Eggleston and Tim Winter of HR visited the school to conduct a "listening tour." RI.55; RII.262, 448. The purpose of the visit was "to solicit feedback on how the school year was going." RI.55; RII.262, 448. Soon after that visit, and given the above-described complaints, Dr. Eggleston and Ms. Tartt discussed how she could improve and identified future goals.[5] The discussions resulted in a formal administrative improvement plan for Ms. Tartt.

Dr. Gustafson also formally evaluated Ms. Tartt. The evaluation had 41 components, and Ms. "Tartt was evaluated as Ineffective in 14; Developing in 24; Effective in 3; and Highly Effective in 0." RI.46; RII.250. Ms. Tartt received a "Highly Effective" rating for her students' performance, which was a separate score. RI.46; RII.250. As both parties agree, Ms. Tartt was given *some* formal evaluation, but she was not evaluated as often as Kansas law requires.

At Dr. Eggleston's direction, Dr. Gustafson had also been working on plans for Ms. Tartt's professional development. In late January 2022,

---

[5] Ms. Tartt disputes exactly when this discussion occurred and whether Dr. Eggleston himself introduced areas of improvement, but she does not dispute that it occurred soon after the listening tour and involved discussions about how she could address staff concerns. *See* RII.263.

5

Dr. Gustafson and Ms. Tartt met to discuss those plans. Dr. Gustafson told Ms. Tartt some employees felt uncomfortable with her because, when Ms. Tartt did not like what others were saying, she would stare rather than lower her gaze or turn her head. As the District summarized, Dr. Gustafson also mentioned, because "they were masked at the time" due to the COVID-19 pandemic, "she could only imagine [Ms. Tartt's] facial expression." RI.48; RII.255, 443.

On January 30, 2022, Ms. Tartt sent a memo to Dr. Gustafson, copying Dr. Eggleston, calling Dr. Gustafson's comments "microaggressive," "racist[,] and inappropriate." RI.48; RII.255. Five days later, on February 4, 2022, Dr. Eggleston submitted to the Board the names of administrators recommended for early contract renewal, but Ms. Tartt was not on that list.[6] Still, Dr. Gustafson was then hopeful Ms. Tartt's employment could be salvaged, and efforts continued.

On February 7, 2022, Ms. Tartt and Dr. Eggleston had a meeting, which Ms. Tartt recorded. Ms. Tartt recounted Dr. Gustafson's comments about her facial expressions, then said, "I think it was inappropriate, and I think, I know it had a racial connotation to it. Now whether or not [Dr. Gustafson] intended

---

[6] While the District disputes the paragraph asserting the precise date of Ms. Tartt's nonrenewal, the dispute focuses on facts other than the date. *See* RII.453. We thus agree with the district court that the gap between Ms. Tartt's complaint about Dr. Gustafson and her omission from this list was five days. *See* RII.512, 522–23.

it to be that way, that's why it's called microaggression." RI.49; RII.250. They met again two days later, this time joined by Dr. Gustafson. Dr. Eggleston listened to Ms. Tartt and encouraged her and Dr. Gustafson to work together. That was the last time Ms. Tartt met with District administrators to discuss concerns about how she had been treated—though she suggests that is only because further complaints would have been futile.

## C

In mid-February 2022, Ruth Godbout, a senior administrator at the District, met with Ms. Tartt and others and assigned some tasks to assistant principals. Ms. Tartt claims this "took 75% of [her] job away from [her]." RII.258.

That same month, Dr. Eggleston recommended Ms. Tartt resign. He also suggested she might move to another position within the District, but Ms. Tartt was not interested. The District administrators concluded Ms. Tartt was not meeting certain goals in her administrative improvement plan, including addressing her body language and demeanor.[7]

Around this time, Dr. Gustafson continued to field complaints from staff related to Ms. Tartt. Dr. Eggleston was similarly concerned about staff losses,

---

[7] Ms. Tartt argues those conclusions play into an "angry Black woman" stereotype she had been subjected to, but she does not controvert that the administrators thought she had not met stated goals. *See* RII.265.

untimely work, and staff complaints, leading him to remove Ms. Tartt from JCHS.[8] She was placed on administrative leave that March—initially for just one Monday, and then for the rest of that week—and ultimately reassigned to district central offices.

Board members also heard complaints about Ms. Tartt, and how things were going at JCHS, from staff and other stakeholders. They conveyed to Dr. "Eggleston that they had lost confidence in Tartt's ability to lead the building, maintain order in the building, work with staff, communicate and problem solve."[9] RI.59. On May 3, 2022, Board members voted unanimously not to renew Ms. Tartt's contract for the following school year. In sworn affidavits submitted by the Board during the summary judgment proceedings, six of the seven Board members reported they did not know of Ms. Tartt's January 30 memo complaining about Dr. Gustafson. Ms. Tartt advanced no contrary evidence.

---

[8] Ms. Tartt disputes this fact, but she does not give any reason to controvert that Dr. Eggleston harbored these concerns, instead simply describing an email she had sent him before this decision. *See* RII.266, 450.

[9] Ms. Tartt controverts these Board complaints, but she only asserts the reasons the Board members gave were pretextual—a legal argument. *See* RII.266–67. She concludes the Board members' eventual decision to terminate her "simply didn't make sense by any matrix." RII.266. But she advances no contrary factual allegations, so we accept the allegations that Board members received these complaints about Ms. Tartt and that they reported losing confidence in her.

The District has consistently maintained the Board members had exclusive authority to decide whether to renew Ms. Tartt's contract. *See* RI.61 (the District framing the nonrenewal decision as belonging to the Board, then stating "Tartt's contract was nonrenewed on May 3, 2022 *by a unanimous decision of the* [*Board*]" (emphasis added)); RI.66 (the District explaining "[t]he [Board] had sole authority to nonrenew Tartt's contract"); RI.68 (the District calling the Board "[t]he final decision makers" on "nonrenewal").[10] And Ms. Tartt has never disagreed. *See* RII.268 (Ms. Tartt acknowledging in her summary judgment opposition that, "[a]ccording to the Associate Superintendent, the termination was a board driven decision"); RII.247–85 (Ms. Tartt, in her summary judgment opposition, identifying no one besides Board members with authority over the decision not to renew her contract).

**D**

In March 2021, Ms. Tartt sued the District in federal court alleging "racial discrimination and retaliation arising out of [her] illegal firing" under 42 U.S.C. § 1981 and Title VII. RI.8. Following discovery, the District moved for summary judgment on both claims. Ms. Tartt opposed the motion. Each party included a number of exhibits with its summary judgment filings. Most

---

[10] At oral argument, in response to the panel asking, "Who was the ultimate decisionmaker for her termination?", the District reiterated, "The Board of Education." Oral Arg. at 28:40–43.

relevant to this appeal are three affidavits submitted by Ms. Tartt in opposing summary judgment: one from Ms. Tartt; one from Dawn Toomey, who served as the District's HR Director from 2019 (before Ms. Tartt was hired into the District) until the end of the 2020–21 school year; and one from Jonathan Jacobson, an academic coach at the District who worked with Ms. Tartt.

The District soon filed what it styled a "motion to strike" much of those three affidavits. RII.423 (capitalization omitted). In the motion, the District argued that some paragraphs in the affidavits were not based on personal knowledge or otherwise violated Federal Rule of Civil Procedure 56 and asked the court to "disregard or strike" them. RII.423 (citing Fed. R. Civ. P. 56(c)(4)). In response, Ms. Tartt insisted there is no support in the Federal Rules for striking *affidavits*, as the primary basis for a motion to strike is Rule 12(f), which covers only *pleadings*. She then argued the challenged paragraphs had a proper evidentiary basis.[11]

The district court ruled on this motion in July 2024. The court overlooked the alleged procedural defect of filing a motion to strike and granted the motion in part, disregarding some of the identified affidavit paragraphs on a variety of bases.

---

[11] The District also challenged Mr. Jacobson's affidavit in full because it was not notarized. Ms. Tartt moved to correct that oversight, and the district court granted that motion. No party challenges that decision on appeal.

The district court ruled on the summary judgment motion that same month. As to both the discrimination and retaliation claims, the court applied the three-step burden-shifting framework in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). The court concluded Ms. Tartt had established a *prima facie* case on both claims, and the District had shouldered its burden to show a legitimate, nondiscriminatory reason for Ms. Tartt's nonrenewal. But the district court concluded Ms. Tartt failed to show the legitimate reasons were pretextual. On the discrimination claim, the court analyzed the summary judgment record—after disregarding some challenged parts of the affidavits submitted by Ms. Tartt to oppose the motion—and determined the evidence did not "rise to the level of pretext." RII.521. On the retaliation claim, the court found "Plaintiff fail[ed] to make a single pretext[] argument rebutting Defendant's legitimate reasons for termination. Thus, Plaintiff wholly fail[ed] to provide any evidence or argument to show pretext." RII.524. Having rejected both claims, the court granted summary judgment for the District in full.

This timely appeal followed, challenging the district court's rulings on both the motion to strike and the motion for summary judgment.[12]

_____

[12] The order on summary judgment is the final dispositive order on appeal. But the earlier order on the motion to strike is also properly before us. No party suggests otherwise—and for good reason. The Federal Rules of Appellate Procedure confirm we can review "all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal." Fed. R. App.

## II

### A

We begin with Ms. Tartt's claims under § 1981. Recall, Ms. Tartt advanced the discrimination and retaliation claims under both § 1981 and Title VII. *See* RI.8. She does not meaningfully distinguish between those two causes of action in any of her allegations or filings. *See, e.g.*, RI.8–19 (operative complaint). The district court likewise analyzed the two causes of action together and resolved them both for the District on summary judgment. *See* RII.515, 521–22 (district court order). But we now clarify that no cause of action under § 1981 is available to Ms. Tartt in this case.

The Supreme Court has made clear 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett* v. *Dal. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *see also Bolden* v. *City of Topeka, Kan.*, 441 F.3d 1129, 1134–1137 (10th Cir. 2006) (confirming subsequent legislative amendments did not override that rule from *Jett*). That rule is decisive here.

---

P. 3(c)(4). Here, Ms. Tartt's notice of appeal happened to identify both orders. *See* RII.526. But we could review the order on the motion to strike even if it did not. *See Siloam Springs Hotel, L.L.C.* v. *Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) ("A notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders." (quoting *Cole* v. *Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 n.7 (10th Cir. 1994))).

Ms. Tartt sued only one defendant, the District. The district court found as a stipulated fact—and no party contests—the District is a "governmental subdivision of the State of Kansas." RI.27. And Ms. Tartt's complaint seeks only damages. We therefore find, under *Jett*, she cannot proceed under § 1981, so we consider both the discrimination and retaliation claims under only Title VII.

## B

We now turn to Ms. Tartt's challenges to the rulings on the District's motion to strike or disregard portions of the three affidavits. As we will explain, we agree with Ms. Tartt's arguments in part. But, as we will explain, our holding affects only the discrimination claim. We first lay out our standard of review and the applicable law before explaining our disposition.

### 1

"We review the district court's exclusion of evidence for abuse of discretion. We will not reverse the district court's evidentiary ruling 'absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment.'" *Eller* v. *Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir. 2013) (citing and quoting *Whittington* v. *Nordam Grp. Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005)). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."

*Lyons* v. *Jefferson Bank & Tr.*, 994 F.2d 716, 727 (10th Cir. 1993) (quoting *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "Even if the trial judge 'abused his or her discretion in making a decision to exclude evidence, we will overlook the error as harmless unless a party's substantial right was affected.'" *Eller*, 739 F.3d at 474 (quoting *Perkins* v. *Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1146–47 (10th Cir. 2009)).

Several subsections of Federal Rule of Civil Procedure 56 bear on Ms. Tartt's evidentiary arguments. Rule 56(c)(2) provides, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." And Rule 56(e) provides,

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order.

14

**2**

On appeal, Ms. Tartt challenges the district court's decision to disregard portions of the three above-described affidavits (her own affidavit and those from Ms. Toomey and Mr. Jacobson). Affidavits can provide important evidence in many cases. They are "sworn to by the declarant before an officer authorized to administer oaths," which makes affidavits so "solemn" that they can serve reliably as testimony for certain purposes. *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 310 (2009) (first quoting *Affidavit*, *Black's Law Dictionary* 62 (8th ed. 2004); and then quoting *Crawford* v. *Washington*, 541 U.S. 36, 51 (2004)).

As a preliminary matter, Ms. Tartt reprises the argument advanced in the district court that *all* of the District's challenges to the affidavits must fail because it is procedurally improper to move to strike an affidavit. This argument is unavailing. The parts of Rule 56 discussed above leave no doubt parties may challenge, and courts may disregard, inadmissible or otherwise improper affidavits at summary judgment. And, while the District styled its motion as a "Motion to Strike," its contents actually called for the district court "to *disregard or* strike specific paragraphs." RII.423 (emphasis added). As Ms. Tartt herself acknowledges, courts often "simply *disregard* those portions that are not shown to be based on personal knowledge or otherwise comply with Rule 56(e)." Op. Br. at 17 (emphasis added); *see also, e.g.*, *Milne* v. *USA*

15

*Cycling Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009) (finding the district court did not abuse its discretion in excluding an affidavit at summary judgment for want of a proper evidentiary foundation). What is more, even if the District had filed a motion (only) to *strike* the affidavits, this court has—in unpublished but persuasive decisions—routinely overlooked that procedural irregularity. *See, e.g.*, *Chevez-Acosta* v. *Sw. Cheese Co., LLC*, 610 F. App'x 722, 727–28 (10th Cir. 2015) (unpublished) ("Even if . . . granting a motion to strike was an uncommon vehicle through which to disregard these statements [in an affidavit], . . . [t]his alleged 'error' in no way prejudiced [the plaintiff] and does not amount to an abuse of discretion."); *Pack* v. *Hickey*, 776 F. App'x 549, 556 (10th Cir. 2019) (unpublished) (similarly finding "striking portions of [an] affidavit" at summary judgment was not an abuse of discretion).[13]

Ms. Tartt also challenges the merits of the district court's decision to disregard portions of the affidavits. Her appellate briefing leaves the precise contours of her evidentiary challenges somewhat unclear. But, having reviewed *all* paragraphs the district court disregarded, we discern no abuse of discretion, with two exceptions.

---

[13] We cite unpublished decisions only for their persuasive value, recognizing that they do not constitute binding precedent. *See United States* v. *Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022); *see also* 10th Cir. R. 32.1(A).

Recall, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ." Fed. R. Civ. P. 56(c)(4). As the district court correctly summarized, "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." RII.498 (quoting *Argo* v. *Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006)).

The district court disregarded several parts of Ms. Toomey's affidavit on that basis. Specifically, it singled out paragraph 11, sentences 6 through 8; all of paragraph 12; paragraph 13, sentences 1 and 2; and all of paragraph 17. We find no abuse of discretion as to those parts of paragraph 13 and 17.[14] But we find the district court erred as to those parts of paragraphs 11 and 12.

---

[14] Paragraph 13, sentences 1 and 2 read, "I am told that the District now claims that 'listening sessions' served as an evaluation tool of Ms. Tartt. This is simply an after-the-fact attempt to cover for the lack of the statutory evaluation." RII.339. And paragraph 17 reads,

> I strongly believe there was racial animus involved in the decision not to offer Mrs. Tartt a contract after her second year at JCHS. The statement that Merrier had a target on her back as one of two black administrators in the District has merit from my view as former-Executive Director of Personnel Services for Geary County USD 475.

RII.340–41. These passages are entirely about events that happened when Ms. Toomey, at her own admission, no longer worked in the District. She had left the District before any "listening sessions," RII.339, and before "the decision not to offer Ms. Tartt a contract," RII.340; *see* RII.337 (noting Ms. Toomey's tenure with the District ended before the 2021–22 school year, when these events occurred).

In paragraph 11, sentences 6 through 8, Ms. Toomey avers, "It is my understanding that Dr. Eggleston and Dr. Gustafson are stating that the[y] were not aware of the requirement of evaluations. I also understand they are now trying to say that no school administrators were being evaluated. This is not accurate." RII.339. In this passage, Ms. Toomey ultimately concludes two claims are inaccurate: *first*, Drs. Eggleston and Gustafson lacked awareness of the evaluation requirements, and *second*, no administrators were evaluated. Contrary to the district court's ruling, these two conclusions *are* based on Ms. Toomey's personal knowledge.

In the same paragraph, Ms. Toomey gives a basis for concluding that Drs. Eggleston and Gustafson were aware of the evaluation requirements: "During my time at the school district, Lacee Seel, former Associate Superintendent[,] and Dr. Gustafson would evaluate elementary administrators and Dr. Eggleston was responsible for the secondary administrators." RII.338. True, Ms. Toomey could have explained how she acquired the knowledge that Drs. Eggleston and Gustafson disclaimed awareness of the evaluation requirements. But the bottom line is Ms. Toomey has averred—based on specific things she knew about the evaluation process "[d]uring [her] time at the school district"—those administrators must have known of the evaluation requirements. RII.338. That satisfied the personal knowledge requirements of Federal Rule of Civil Procedure 56(c)(4).

18

Ms. Toomey similarly relied on her personal knowledge to dispute the claim that "no school administrators were being evaluated." RII.339. In the following sentences, she lists several people who she knew "got one," meaning a formal evaluation. RII.339.[15] Again, while more specifics about how she came to "understand" that Drs. Eggleston and Gustafson were claiming no one received evaluations, RII.339, would have made her affidavit clearer, we still find her *rebuttal* of that claim was the important point, and that rebuttal was clearly based on personal knowledge. For these reasons, we must conclude that disregarding these three sentences in paragraph 11 was an abuse of discretion.

We conclude similarly as to paragraph 12. That paragraph reads,

> If Mrs. Tartt was not evaluated it was a conscious decision on the part of the administration. [A state system] maintains a record of all evaluations performed. They are set on a "cycle". The system sends reminders and I did as well. I would send out email reminders to the administrators (including Dr. Eggleston and Dr. Gustafson) advising them of their evaluations due out.

---

[15] The affidavit states, in relevant part,

> It is my understanding that Dr. Eggleston and Dr. Gustafson are stating that the[y] were not aware of the requirement of evaluations. I also understand they are now trying to say that no school administrators were being evaluated. This is not accurate. Alicia Scofield definitely got one. She was in her 2nd year as principal of Ware and is now the Director of Student Support Services. Veronica Wait got one as Vice Principal at Seitz. So did Jodi Testa. Kim Dressman got one. Melanie Laster would have had one prior to her retirement.

RII.339.

19

RII.339. Had Ms. Toomey averred that "Ms. Tartt was not evaluated" during her second year, we would agree that was not based on personal knowledge, because Ms. Toomey had left the District before Ms. Tartt's second year. RII.337. But that is not what Ms. Toomey wrote. Instead, she suggested "[*i*]*f*" that were true, that *must have been* a conscious decision. RII.339. And that assertion is based on her personal knowledge from her time as HR Director about how frequently email reminders went out, including to the administrators who evaluated Ms. Tartt. We therefore find excluding this paragraph based on a lack of personal knowledge also was an abuse of discretion.[16]

The District advances no argument that these evidentiary errors are harmless. *See Eller*, 739 F.3d at 474 ("[W]e will overlook the error as harmless unless a party's substantial right was affected." (quoting *Perkins*, 557 F.3d at 1146–47)). And we see no basis for finding harmlessness *sua sponte*. We

---

[16] This case is usefully contrasted with *Argo* v. *Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193 (10th Cir. 2006). In *Argo*, an affiant claimed no females had been terminated from a certain position "for failing to make monthly or yearly goals"—a claim he could not have made without "knowledge about the performance and discipline of every female" in that position. *Id.* at 1199–1200. Whereas the affiant in *Argo* "simply was not in a position to acquire such comprehensive knowledge," *id.* at 1200, the same is not true of Ms. Toomey. She alleged a *specific* basis to conclude any failures to evaluate must have been a conscious decision on the part of *particular administrators*, based on what she knew from her personal experience about reminders being routinely sent to those administrators. RII.339.

therefore remand to the district court to reassess the discrimination claim without disregarding any of paragraphs 11 and 12 of Ms. Toomey's affidavit. *See United States* v. *Hasan*, 609 F.3d 1121, 1129 (10th Cir. 2010) ("When the court of appeals notices a legal error, it is not ordinarily entitled to weigh the facts itself and reach a new conclusion; instead, it must remand to the district court for it to make a new determination under the correct law."). Given our conclusion, we need not reach the parties' remaining arguments on the discrimination claim.[17]

## C

This evidentiary issue, however, cannot rescue Ms. Tartt's retaliation claim, which fails for an independent reason. To show why, we outline our standard of review, describe the applicable law, and explain why we affirm the district court's grant of summary judgment to the District on that claim.

---

[17] We note that, as to the Board members, Ms. Tartt's briefing to this court focuses only on alleged racism by Mr. Johnson. But, recall, the summary judgment record shows Dr. Gustafson had messaged Ms. Pinaire, "I was offended by Mary's post though because she indicated not liking how things are going in USD 475. Make no mistake, Hudson and Hatcher (Johnson and Hayden) are after Dr. E and Ms. Jackson"—and Ms. Pinaire had responded, "racist." RI.47. The four last names in a row refer to Board members or candidates at the time. When reassessing the discrimination claim, the district court should also consider specific allegations of racism by Board members other than Mr. Johnson, if any are made.

## 1

"We review summary judgment de novo, applying the same legal standard as the district court." *Marcantel* v. *Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) (quoting *Gutierrez* v. *Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)). Specifically, "[s]ummary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "When applying this standard, we review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (quoting *Gutierrez*, 841 F.3d at 900).

## 2

"Under Title VII, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII].'" *Iweha* v. *Kansas*, 121 F.4th 1208, 1233 (10th Cir. 2024) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). "[A] plaintiff may establish a retaliation claim using . . . direct evidence . . . or [by] 'rely[ing] on the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered reason for its decision is a pretext for retaliation.'" *Id.* (last alteration in original) (quoting *Fye* v. *Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008)). Ms. Tartt does not argue she has marshaled direct evidence of retaliation, and no party challenges the district court's decision to analyze

this claim under the *McDonnell Douglas* framework. We therefore proceed under that framework.

At the first step of *McDonnell Douglas*, the plaintiff must "ma[k]e a prima facie showing of retaliation." *Id.* To do so, "a plaintiff must prove '(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.'" *Id.* (quoting *Vaughn* v. *Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008)). At step two, "the defendant must 'provide a legitimate and facially non-retaliatory reason for its'" adverse action. *Id.* (quoting *Vaughn*, 537 F.3d at 1153). "If the defendant provides such a reason," then, at step three, "the plaintiff 'bears the ultimate burden of demonstrating that [the defendant's] proffered reason is pretextual.'" *Id.* (alteration in original) (quoting *Vaughn*, 537 F.3d at 1150).

**3**

The district court concluded Ms. Tartt had met her burden to establish a *prima facie* case at step one, and the District had met its burden at step two to show a legitimate, nonretaliatory reason for her contract nonrenewal. But as to step three, the district court determined Ms. Tartt failed to show the District's proffered reason for her nonrenewal was pretextual. On that basis, the district court granted summary judgment for the District on the retaliation claim.

On appeal, Ms. Tartt urges reversal, contending the district court erroneously overlooked evidence of pretext that she had presented. Op. Br. at 35–48. According to the District, the district court was correct to find Ms. Tartt had not established pretext, and it also maintains she did not meet her burden to establish a *prima facie* case; either reason, the District suggests, is sufficient to affirm. Resp. Br. at 28–33. We agree with the District's arguments on the *prima facie* case, so we affirm on that alternative basis and need not reach the other two *McDonnell Douglas* steps. *See Elkins* v. *Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) ("We have discretion to affirm on any ground adequately supported by the record.").[18]

On the *prima facie* case issue, the District accepts the district court's conclusions that (1) Ms. Tartt's January 30, 2022 memo describing her complaint about Dr. Gustafson was protected activity, and (2) her nonrenewal

---

[18] This court considers three factors in deciding whether to exercise its discretion to affirm on an alternative ground—here, that Ms. Tartt failed to make out a *prima facie* case of retaliation. *See Elkins* v. *Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). , all three factors support our holding. *First*, this alternative ground "was fully briefed and argued here and below." *Id.*; *see* RI.71–74 (the District arguing this ground to the district court); RII.281–84 (Ms. Tartt responding); Resp. Br. at 28–29 (the District raising this ground on appeal); Reply Br. at 6–8 (Ms. Tartt responding). *Second*, no one disputes the extensive proceedings before the district court constituted "a 'fair opportunity to develop the [factual] record.'" *Elkins*, 392 F.3d at 1162 (alteration in original) (quoting *Seibert* v. *Oklahoma ex rel. Univ. of Okla. Health Sci. Ctr.*, 867 F.2d 591, 597 (10th Cir. 1989)). *Third*, "in light of factual findings to which we defer or uncontested facts," our analysis "involve[s] only questions of law." *Id.*

constituted adverse employment action. Resp. Br. at 28. Thus, like the parties, we just focus on the causation element.

The district court concluded Ms. Tartt had carried her burden to show a causal connection between the protected activity and the adverse action because "less than a week [had] passed from the date of the protected conduct to the date [she] was informed that she would not be submitted for early contract renewal." RII.523. That "close temporal proximity," the court found, allowed "a reasonable fact finder [to] reasonably infer that a causal connection existed." RII.523.

The District insists the temporal proximity alone does not demonstrate causation on this record. As the District points out, "six out of seven [Board] members" claimed they "had no knowledge of Tartt making a complaint about Dr. Gustafson regarding microaggressions or racial comments," and Ms. Tartt offered no contrary evidence. Resp. Br. at 29. The Board members were the ultimate decisionmakers on whether to renew Ms. Tartt's contract, the District reasons, so her nonrenewal could not have been retaliatory when all but one of those decisionmakers did not know of the protected activity in the first place.

Ms. Tartt replies that the District needed to "fil[e] a cross-appeal" to raise this argument. Reply Br. at 6. And, on the merits, she suggests the Board members' claimed ignorance is insufficient to rule for the District on this issue. Rather, Ms. Tartt contends facts should be resolved in her favor in this posture,

25

and the Board members may have lied when they claimed not knowing about her complaint about Dr. Gustafson.

The District has the winning argument. The *McDonnell Douglas* burden-shifting framework confirms the evidentiary burden was with Ms. Tartt at this stage. *See Iweha*, 121 F.4th at 1233 (noting "*the plaintiff* must prove" a *prima facie* case (emphasis added)). That means Ms. Tartt "ha[d] the burden of proving that those who acted against her had knowledge of her protected activity." *Lindsay* v. *Denver Pub. Schs.*, 88 F.4th 1323, 1328–29 (10th Cir. 2023). "After all," we have explained, "an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of [the antidiscrimination statute]." *Id.* at 1237 (alteration in original) (quoting *Petersen* v. *Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)).

Ms. Tartt proffered no evidence from which a factfinder could reasonably infer that, when the Board unanimously decided not to renew her contract, more than one Board member knew of the January 30 memo.[19] Ms. Tartt does not suggest otherwise. Her contention that the six Board members may be lying is no substitute for some evidence, which our caselaw requires her to present at this stage.

---

[19] The only Board member who apparently knew of Ms. Tartt's complaint against Dr. Gustafson was Dr. Sarah Elizabeth Hudson. *See* RI.61, 183.

The district court's temporal-proximity analysis does not change our conclusion. To be sure, the district court correctly determined that a five-day gap between protected activity *and an adverse employment action* is ordinarily enough to infer causation. *See Conroy* v. *Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) ("It appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference . . . ."). But we agree with the District that, in this case, timing is not dispositive.

The district court identified *only* "the non-renewal of Plaintiff's contract" as "an adverse employment action" for purposes of the retaliation claim.[20] RII.522. At best, the five-day gap establishes that *Dr. Eggleston*—who was included on Ms. Tartt's memo, and who then omitted Ms. Tartt from the list of people recommended for early contract renewals—may have had a retaliatory motive in that omission. It says nothing about the six of seven decisionmakers who, months later, voted unanimously not to renew her contract, and who disclaimed knowing about the memo at the time.[21] So no matter what motives

---

[20] Perhaps Ms. Tartt could have argued the district court erred by ignoring other potential adverse employment actions. But she did not. *See also* RI.8 (the complaint summarizing, "This is a racial discrimination and retaliation action arising out of the *illegal firing* of Merrier A. Jackson Tartt by the USD 475 in Junction City, Kansas." (emphasis added)).

[21] Ms. Tartt advanced no basis to impute anyone else's alleged retaliatory motives to any Board members.

27

*others* may have had, if there is no evidence from which to infer the memo caused retaliation by *the Board—the decisionmakers for the only identified adverse employment action*—Ms. Tartt's claim must fail.

Ms. Tartt's contrary arguments are unpersuasive. *First*, despite her suggestion, the District did not need to cross-appeal to raise this argument, as we review the *entire* retaliation claim *de novo*. *See Marcantel*, 993 F.3d at 1221; *see also Elkins*, 392 F.3d at 1162 ("We have discretion to affirm on any ground adequately supported by the record.").

*Second*, Ms. Tartt's citation to an unpublished district court case, mainly for its internal citation to our opinion in *Lindsay*, does not move the needle. *See* Reply Br. at 7 (citing *McCray* v. *McDonough*, No. 22-2154, 2024 WL 3950764, at *25 (D. Kan. Aug. 27, 2024) (unpublished), which in turn cites *Lindsay*, 88 F.4th at 1328–29). The relevant part of *Lindsay* is, "[S]worn testimony denying knowledge (no matter how saintly the witness) is not dispositive at the summary-judgment stage." 88 F.4th at 1328. *Lindsay*'s very *next* sentence, however, states, "But [the plaintiff] has the burden of proving that those who acted against her had knowledge of her protected activity . . . ." *Id.* at 1328–29. That latter principle, which Ms. Tartt does not meaningfully address, is dispositive here.

*Third*, Ms. Tartt urges this court to heed our pronouncement in *Lounds* v. *Lincare, Inc.* that, "in the context of employment discrimination, '[i]t is not

28

the purpose of a motion for summary judgment to force the judge to conduct a "mini trial" to determine the defendant's true state of mind.'" 812 F.3d 1208, 1220–21 (10th Cir. 2015) (quoting *Randle* v. *City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995)). Our disposition does not depart from this principle.[22] We can affirm on the retaliation claim requiring nothing approaching "a 'mini trial.'" *Id.* Again, Ms. Tartt has brought forth *no evidence* that six of seven Board members knew about the protected activity. We have no trouble concluding that is insufficient even at the summary judgment stage.

We therefore affirm the grant of summary judgment to the District on the retaliation claim.

### III

We **REVERSE** (i) the district court's decision to strike paragraph 11, sentences 6 through 8, and all of paragraph 12 of Ms. Toomey's affidavit, and (ii) its grant of summary judgment to the District on the discrimination claim brought under Title VII. As to those rulings, we **REMAND** for further proceedings consistent with this order. We otherwise **AFFIRM**.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[22] We note the claim for which Ms. Tartt marshals this quote alleges retaliation, not discrimination.